Rockingham
No. 90-525

SUSAN K. SHARGAL

v.

STATE OF NEW HAMPSHIRE BOARD OF EXAMINERS
OF PSYCHOLOGISTS & a.

February 24, 1992

*David J. KillKelley*, of Laconia, and *Jay C. Boynton*, of Andover (*Mr. KillKelley* and *Mr. Boynton* on the brief, and *Mr. KillKelley* orally), for the plaintiff.

*John P. Arnold*, attorney general (*Douglas N. Jones*, assistant attorney general, on the brief and orally), for the Board.

THAYER, J.  Pursuant to Supreme Court Rule 8, the Superior Court (*Gray*, J.) has transferred the following question: "Whether plaintiff's action, which seeks to impose liability on the [New Hampshire] Board [of Psychologists] based solely upon actions taken by co-defendants in the course of adjudicating an administrative complaint, is barred by the doctrines of quasi-judicial immunity or sovereign immunity?"

Because the New Hampshire Board of Psychologists (the Board) is entitled to quasi-judicial immunity in this case, we hold that the plaintiff's claim against the Board is barred and therefore reverse, in part, the trial court's ruling. The relevant facts behind the issue on appeal are as follows.

The plaintiff, Susan K. Shargal, is a certified psychologist who, in October of 1985, was evaluating a second-grade boy at the request of the boy's parents. Coincidentally, a Dr. Kelly was also evaluating the boy on behalf of the local school system. A professional disagreement arose between the plaintiff and Dr. Kelly regarding the boy's evaluation and treatment. This disagreement escalated into a serious conflict and eventually the plaintiff and Dr. Kelly each filed a complaint against the other with the Board alleging incidents of professional misconduct. In November 1986, the Board, through its chairperson, Dr. Seeman, appointed Dr. Mark Peterson to investigate the allegations of fact and accusations of misconduct. In his report, Dr. Peterson found that the plaintiff had violated the Ethical Guidelines for Psychology and recommended, *inter alia*, that she be restricted from providing advocacy-oriented consultation to any educational institution for a period of not less than two years.

Thereafter, the Board scheduled an evidentiary hearing on the issues raised in Dr. Peterson's report. The plaintiff and her counsel participated in this hearing, providing testimony and legal argument. In December 1988, the Board concluded that the plaintiff had

violated the Ethical Guidelines for Psychology and issued a formal warning to her.

In April of 1989, the plaintiff sued Dr. Peterson, Dr. Seeman, and the Board for their actions taken in the course of adjudicating Dr. Kelly's professional complaint against the plaintiff. In count one of her writ, the plaintiff alleged that Dr. Peterson defamed her by maliciously or recklessly publishing libelous statements in his report with the intent to hold the plaintiff up to "ridicule and humiliation." In count two, she alleged that Dr. Peterson negligently conducted his investigation of Dr. Kelly's charges against her. In count three, she alleged that Dr. Peterson "negligently stated misinformation . . . and negligently made conclusions and recommendations" in his report. In count four, the plaintiff alleged that Dr. Seeman negligently hired and instructed Dr. Peterson to conduct the investigation. Lastly, in count five, the plaintiff alleged that the board was liable to the plaintiff under the doctrine of imputed liability for the acts of its agents and employees, Dr. Peterson and Dr. Seeman. The Board, through the attorney general, moved to dismiss all five counts of the complaint. The trial court granted the motion as to count three and part of count five, but denied it as to the other counts in the plaintiff's writ. The Board's motion for reconsideration was denied in September 1990, and this court subsequently accepted the interlocutory appeal.

On appeal, the Board raises three arguments. First, the Board contends that the plaintiff's writ does not state a cause of action against it because sovereign immunity protects the State, its agents and employees from tort liability with regard to the plaintiff's contentions. Second, the Board asserts that even if the plaintiff can establish that the legislature has waived sovereign immunity under the circumstances in this case, the activities of the Board and its agents are adjudicatory in nature, and as such, are protected from tort liability under the doctrine of quasi-judicial immunity. Third, assuming investigatory activities are not protected, the Board maintains that the allegations of negligent investigation in count two of the plaintiff's writ cannot be imputed to the Board because the alleged conduct was performed by a non-member of the board.

The plaintiff contends that, in light of the trial court's findings that the actions of the two individual defendants were not judicial in nature, there is no legal issue in controversy before this court and the interlocutory appeal must be dismissed. In the alternative, the plaintiff asserts that the doctrine of sovereign immunity does not apply here because the legislature has expressly waived its protections, *see*

RSA ch. 541-B and RSA 99-D:1, where the conduct complained of concerns the performance of, or the failure to perform, non-discretionary duties.

We note in passing that the parties apparently disagree on the scope of the question presented for review. Notwithstanding the arguments of the attorney general on appeal, the counts in the writ concerning the two individual defendants, Dr. Peterson and Dr. Seeman, are not before us and will not be considered. We have no factual basis on which to review the actions and responsibilities of the two individual defendants, and we therefore construe the question presented in the interlocutory transfer narrowly. Accordingly, we limit our inquiry to the question of whether the doctrines of sovereign immunity or quasi-judicial immunity protect the Board from liability in this case. In so doing, we adhere to our practice of declining to confront issues in interlocutory appeals that are not squarely before this court. *See In re Terry*, 129 N.H. 111, 112, 523 A.2d 88, 89 (1986). Thus, the only count in the plaintiff's writ at issue here is count five, which seeks to impute liability to the Board for the actions of its agents and employees.

■ We first address the Board's contention that the doctrine of quasi-judicial immunity protects it from any liability in this case because, if there is such immunity, that will be dispositive of the question here on appeal. The doctrine of quasi-judicial immunity has long been recognized in this State, and has been explained as "'the rule of public policy which protects judicial officers and *those exercising judicial functions* . . . from liability in actions of tort for wrongs committed by them when acting in that capacity.'" *Sweeney v. Young*, 82 N.H. 159, 161, 131 A. 155, 156–57 (1925) (emphasis added) (quoting *Moon v. Flack*, 74 N.H. 140, 143, 65 A. 829, 831 (1907)). "It has been repeatedly decided in this state that when an officer *or a board* is called upon to pass upon evidence and decide, their conclusion cannot be collaterally attacked, and that they are not liable to answer in a suit for their action. The reason given in the cases is that such action is judicial." *Sweeney*, 82 N.H. at 161–62, 131 A. at 157 (emphasis added) (quoting *State v. Corron*, 73 N.H. 434, 455, 62 A. 1044, 1051 (1905)). In *Sibson v. State*, 111 N.H. 305, 282 A.2d 664 (1971), this court affirmed a trial court's dismissal of a claim against the New Hampshire Port Authority alleging that the authority was liable for damages resulting from its refusal to allow the plaintiffs to fill portions of their land for residential development. The basis for the *Sibson* decision was that although the port authority's actions were

erroneous, its actions were part of an adjudicatory process, provided for by statute, and thus quasi-judicial in nature. *Id.* at 308, 282 A.2d at 666. Therefore, quasi-judicial immunity protected the port authority from civil suit. *Id.*

Similarly, the Board's actions in the case now before us fall within its statutory authority to conduct adjudicatory proceedings. The Board is an administrative agency attached to the department of health and human services under RSA 21-G:10 and RSA 330-A:3-a (Supp. 1990). The legislature has empowered the Board with rulemaking and disciplinary authority over psychologists who are qualified to practice in this State. RSA 330-A:8, :14 (Supp. 1990); *cf.* RSA 330-A:14 (Supp. 1991) (by an amendment effective January 1, 1992, the legislature has provided the Board with good faith immunity). In order to exercise its disciplinary authority, the Board has been granted the power to hold hearings, during which it may subpoena witnesses, records, documents and administer oaths to those individuals who testify before the Board. RSA 330-A:15 (Supp. 1990). Disciplinary adjudicatory proceedings had been commenced. The Board initiated an investigatory activity in support of the proceedings. Nothing in the record suggests that the Board acted outside of its authority during its investigation of the plaintiff. The responsibilities the legislature has delegated to the Board as exercised in this case are judicial in nature; in exercising such responsibilities, the Board's "'liabilities are determined by the rules applicable to a judicial officer.'" *Sweeney,* 82 N.H. at 160, 131 A. at 156 (quoting *Sargent v. Little,* 72 N.H. 555, 556, 58 A. 44, 44 (1904)).

The plaintiff, however, contends that under RSA chapter 541-B and RSA chapter 99-D the legislature has waived any immunity which would protect the Board from her claim. RSA chapter 541-B creates a limited cause of action against the State, its officials and employees. RSA 99-D:1 guarantees sovereign immunity for State officers, officials and employees for acts committed within the scope of their official duties, unless otherwise provided by statute. RSA 541-B: 19, I(a) (Supp. 1990) expressly excepts from its coverage any claim based upon the exercise of a judicial function. RSA chapter 99-D, by virtue of the provisions in RSA chapter 541-B, cannot be read as limiting the doctrine of quasi-judicial immunity. Therefore, neither RSA chapter 541-B nor the limitation found in RSA 99-D:1 applies to a claim against an adjudicatory body exercising a judicial function in a manner consistent with the authorizing statute. Thus, because the Board's actions are judicial in nature, we hold that there is no waiver

of sovereign immunity. The plaintiff's claim against the Board is therefore barred.

■ Accordingly, we answer the transferred question in the affirmative, and in so doing, we reverse the trial court's order to the extent that it does not dismiss count five in its entirety and remand.

*Reversed in part and remanded.*

All concurred.