Carroll
No. 91-220

## KATHY AND CRAIG BELCHER

v.

## WILLIAM D. PAINE, II

August 27, 1992

*Sheehan, Phinney, Bass & Green P.A.*, and *Roussos, Hage & Hodes*, of Manchester (*Sandra Schneider & a.* on the brief, and *Paul W. Hodes* and *Sara B. Crosby* orally), for the plaintiffs.

*Wadleigh, Starr, Peters, Dunn & Chiesa*, of Manchester (*Robert L. Chiesa & a.* on the brief, and *Robert E. Murphy, Jr.* orally), for the defendant.

HORTON, J. The plaintiffs, Craig and Kathy Belcher, were indicted for aggravated felonious sexual assault and conspiracy to commit aggravated felonious sexual assault. The indictments were ultimately *nol prossed* by the defendant, William Paine, II, the Car-

roll County Attorney. The plaintiffs subsequently brought suit against the defendant alleging reckless and/or negligent investigation, malicious prosecution, and conspiracy to commit malicious prosecution. The defendant moved for summary judgment, asserting that he was absolutely immune from suit in connection with his activities as the prosecutor in the underlying matter. The Superior Court (*Mohl*, J.) agreed and granted his motion. We affirm.

Kathy Belcher operated a State-licensed day care center in her home in Center Conway, which she owned with her husband. Mrs. Belcher had sole responsibility for running the day care center; Mr. Belcher did not participate in the daily operation of the business. A and B began attending the day care center in May 1985, at which time A was three and one-half years old and B was thirteen months old. In June 1985, Mrs. Belcher closed the day care center and A and B entered another local day care program. The children had no further contact with the plaintiffs. Allegations of sexual abuse were raised in April 1986 by A's parents after a discussion with Dr. William T. Nagahiro, a psychologist who had been treating A for approximately six months. In May 1986, he contacted the department of health and human services and reported that A and B had been sexually abused by the plaintiffs; the department, in turn, notified the defendant at the county attorney's office. Dr. Nagahiro also filed an official report with the Conway Police Department. After about one year, the police terminated the investigation, terming it "unfounded," meaning that the police concluded that probable cause did not exist to charge the plaintiffs.

The defendant then began to investigate the allegations of abuse. He retained a Maryland psychologist, Dr. Dennis M. Harrison, to interview and evaluate both A and B. Dr. Harrison reported to the defendant in June 1987 that in his opinion A and B had been sexually abused. He recommended that they undergo a physical examination by Dr. Lawrence Shubin with whom he frequently worked. Dr. Shubin also concluded that both A and B had been sexually abused.

The plaintiffs were each indicted in October 1987 for aggravated felonious sexual assault and conspiracy (with one "Big Josh") to commit aggravated felonious sexual assault. Discovery proceeded for the next eighteen months. The defendant ultimately entered a *nolle prosequi* on all charges.

The plaintiffs filed suit against the defendant on October 4, 1990. Count one of their writ alleges that the defendant was reckless and/or grossly negligent in his investigation of the allegations of sexual abuse. Specifically, they contend that he: (1) did not obtain or review

records of a Conway psychologist that would likely document that the statements made by A and B were not reliable; (2) did not obtain the medical records of A and B which would show that they were not sexually abused; (3) did not obtain the children's mother's diary which would demonstrate that the allegations of sexual abuse were manufactured by the parents and their psychologists; and (4) failed to investigate the credentials of the Maryland psychologist and physician who rendered opinions of sexual abuse when the defendant knew that they were not qualified to render such an opinion, that they acted in bad faith, that they had no reasonable basis to support their opinion, and that their qualifications were suspect. The second count alleges that the institution of criminal proceedings by the defendant constituted malicious prosecution. The final count of the writ alleges that the defendant conspired with others to bring criminal proceedings against the plaintiffs.

The trial court found that the defendant's actions were protected by the cloak of prosecutorial immunity. As to count one it found that the acts or omissions at issue arose due to "the County Attorney's *decision* to go forward with a grand jury proceeding based on the investigative record . . . ." The court concluded that "[w]hat the prosecutor did or did not do in the investigation of the plaintiffs, is not, by itself, the cause of any injury or damage to the plaintiffs and cannot be the basis of personal liability of the prosecutor." With regard to the second count, the court held that a prosecutor is absolutely immune from suit for malicious prosecution, and alternatively, "the [fact] that the grand jury did indict the plaintiffs establishes that there was probable cause for the indictment." The court stated that the plaintiffs could not relitigate the grand jury's finding of probable cause in a later civil action in an attempt "to establish the lack of probable cause and, on account thereof, the liability of the prosecutor for bringing the case to the grand jury." The court also granted summary judgment as to the third count of the plaintiffs' writ, as it found that the defendant could not be liable for conspiring with third parties in the bringing of criminal charges in light of its previous two findings; namely, "[b]ecause the County Attorney is immune from personal liability for the decision to seek an indictment (see Count I, supra), and because no claim for malicious prosecution can lie against the County Attorney on the facts alleged in the writ, (see Count II, supra) . . . ." The plaintiffs filed a motion for reconsideration of the court's order granting summary judgment and, in the alternative, a motion to amend their writ. This motion was denied.

On appeal, the plaintiffs make six arguments in challenging the court's order granting summary judgment and its refusal to permit them to amend their writ: (1) that the defendant is not entitled to absolute immunity because the defendant's actions that caused injury resulted from his role as an investigator; (2) that summary judgment was erroneously granted on the negligence count because the defendant did not establish the absence of a genuine issue of material fact; (3) that a grand jury indictment does not establish the existence of probable cause; (4) that the defendant is not entitled to absolute immunity for malicious prosecution or conspiracy to commit malicious prosecution; (5) that summary judgment should not have been granted as to the malicious prosecution counts because the defendant did not demonstrate the absence of a genuine issue of material fact; and (6) that it was an abuse of discretion for the court not to permit them to amend their writ.

Before addressing the plaintiffs' primary arguments concerning prosecutorial immunity and its application to the present case, we first consider their contention that it was error for the trial court to grant summary judgment on the negligence count and, in turn, on the malicious prosecution counts. They assert that the defendant failed to demonstrate the absence of a genuine issue of material fact. They assert that the defendant did not submit an affidavit, as required by RSA 491:8-a, showing the lack of a genuine issue of fact on the issue of absolute immunity, and that the court's acceptance of the facts set forth in the writ as true relieved the defendant of his burden of proof.

It is firmly established that a trial court, pursuant to RSA 491:8-a, is required to grant summary judgment when, after reviewing the evidence presented in the light most favorable to the opposing party, there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *Manchenton v. Auto Leasing Corp.*, 135 N.H. 298, 300–01, 605 A.2d 208, 210 (1992). In this case, however, the trial court stated that

> "the Motion for Summary Judgment which raises the defense of absolute immunity is more analogous to a Motion to Dismiss, particularly since, for purposes of the motion and the assertion of absolute immunity, the County Attorney does not seem to contest any of the factual allegations of the plaintiffs. Accordingly, the Court will, in considering the absolute immunity issue, take the well-pleaded facts of the Writ as established. In other words, for [purposes of RSA]

"491:8-a and the defendant's motion for summary judgment, there are no genuine issues of fact in dispute. Thus, on the facts as alleged, the Motion for Summary Judgment can be granted only if the County Attorney is entitled to immunity as a matter of law."

Where the trial court grants a summary judgment motion on the basis that the plaintiffs' pleadings fail to state a claim upon which relief can be granted, we review "the court's order as the functional equivalent of an order granting a motion to dismiss." *Towle v. Kiman*, 134 N.H. 263, 264, 591 A.2d 911, 911 (1991). We therefore review the allegations in the plaintiffs' writ to determine if they set forth a cause of action. *Provencal v. Vermont Mut. Ins. Co.*, 132 N.H. 742, 745, 571 A.2d 276, 278 (1990). In so doing, we assume the facts alleged to be true, and construe all reasonable inferences therefrom in the light most favorable to the plaintiffs. *Collectramatic v. Kentucky Fried Chicken Corp.*, 127 N.H. 318, 320, 499 A.2d 999, 1000 (1985).

The plaintiffs first argue that the defendant is not entitled to absolute immunity from their tort claims because the injuries of which they complain arose from his investigation of allegations of sexual abuse rather than from his role as prosecutor. They explain that we must look to the "functional nature" of the defendant's activities to assess the scope of immunity that should attach, and that at best, the defendant's actions warrant only qualified immunity. The plaintiffs concede, however, that if the defendant was acting within the scope of his prosecutorial duties, that he is absolutely immune from suit.

While we have "not had occasion to consider the doctrine of prosecutorial immunity," *State (Haas Complainant) v. Rollins*, 129 N.H. 684, 686, 533 A.2d 331, 332 (1987), we have previously stated that "[a]ll judicial officers when acting on subjects within their jurisdiction, are exempted from civil prosecution for their acts." *Evans v. Foster*, 1 N.H. 374, 377 (1819). This doctrine has been extended "'to apply to the acts and conduct of all public officers in their exercise of judicial authority.'" *Moore v. Cotton*, 94 N.H. 387, 388, 54 A.2d 167, 168 (1947) (quoting *Sweeny v. Young*, 82 N.H. 159, 160, 131 A. 155, 156 (1925)). The proper application and appropriate scope of absolute immunity accorded to a prosecutor has received considerable attention in other jurisdictions, primarily in the federal system. We note that although the cases we rely upon below, specifically, *Imbler v. Pachtman*, 424 U.S. 409 (1976), and *Burns v. Reed*, — U.S. —, 111 S. Ct. 1934 (1991), are concerned with the scope of pros-

ecutorial immunity under 42 U.S.C. § 1983, the analysis therein involves "a considered inquiry into the immunity historically accorded the relevant officer at common law and the interests behind it[ ]" and concludes that "[t]he liability of a State prosecutor under § 1983 must be determined in the same manner." *Imbler*, 424 U.S. at 421. *Imbler* and its progeny are thus applicable to our present discussion.

■■ Our analysis begins with "[t]he recognition of the presumption that qualified immunity is sufficient to protect government officials in the exercise of their duties," *Burns*, — U.S. at —, 111 S. Ct. at 1939, and that the Supreme Court has been "quite sparing" in its recognition of absolute immunity, *id.* at —, 111 S. Ct. at 1939. Nevertheless, it is well settled that prosecutors are absolutely immune from suit for damages arising from "initiating a prosecution and in presenting the State's case," *Imbler*, 424 U.S. at 431, provided that the conduct at issue is "intimately associated with the judicial process," *id.* at 430. The Court specifically declined in *Imbler* to decide whether absolute immunity extends to "those aspects of the prosecutor's responsibility that cast him in the role of an administrator or investigative officer rather than that of advocate." *Id.* at 430–31. The Court did recognize, however, that "the duties of a prosecutor in his role as advocate for the State involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom. . . . Preparation both for the initiation of the criminal process and for a trial, may require the obtaining, reviewing, and evaluating of evidence." *Id.* at 431 n. 33.

■■ Differentiating between advocacy and administrative or investigative roles for purposes of immunity is a difficult task. *See Snell v. Tunnell*, 920 F.2d 673, 693 (10th Cir. 1990) (the rule is easier to state than to apply), *cert. denied*, — U.S. —, 111 S. Ct. 1622 (1991). To determine the scope of immunity to be afforded in a particular situation, the Court employs a "functional approach." *Burns*, — U.S. at —, 111 S. Ct. at 1939 (see cases cited therein). Under this approach, it is necessary to "'examine the nature of the functions with which a particular official or class of officials has been lawfully entrusted, and [to] seek to evaluate the effect that exposure to particular forms of liability would likely have on the appropriate exercise of those functions.'" *Schrob v. Catterson*, 948 F.2d 1402, 1409 (3d Cir. 1991) (quoting *Forrester v. White*, 484 U.S. 219, 224 (1988)). In other words, to determine whether a prosecutor's actions merit absolute immunity, we must focus on the "act, not the actor." *Buckley v. Fitzsimmons*, 919 F.2d 1230, 1240 (7th Cir. 1990), *vacated*, — U.S.

—, 112 S. Ct. 40 (1991), *aff'd,* 952 F.2d 963 (7th Cir. 1992); *see Mireles v. Waco,* — U.S. —, 112 S. Ct. 286, 288 (1991) (per curiam) (relevant inquiry is nature and function of the act, not act itself). Application of the functional analysis confines absolute immunity to those actions that are quasi-judicial in nature. *McSurely v. McClellan,* 697 F.2d 309, 318 (D.C. Cir. 1982). The official seeking the shield of absolute immunity "bears the burden of showing that such immunity is justified for the function in question." *Burns,* — U.S. at —, 111 S. Ct. at 1939; *Robinson v. Volwswagonwerk AG,* 940 F.2d 1369, 1370 (10th Cir. 1991) (due to sparing recognition of absolute immunity by Supreme Court, one claiming such immunity must show clear entitlement), *cert. denied,* — U.S. —, 112 S. Ct. 1160 (1992).

■ The Supreme Court has explained that "the common law rule of immunity is . . . well settled," *Imbler,* 424 U.S. at 424, and is premised upon considerations that "include concern that harassment by unfounded litigation would cause a deflection of the prosecutor's energies from his public duties and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust," *id.* at 423; *Burns,* — U.S. at —, 111 S. Ct. at 1942–44. Our own common law tradition comports with the reasoning of the Supreme Court where we recognize the doctrine of judicial immunity. *See Tilton v. Dougherty,* 126 N.H. 294, 493 A.2d 442 (1985); *Moore,* 94 N.H. 387, 54 A.2d 167; *Evans,* 1 N.H. 374. The Supreme Court has also stated that vexatious litigation "could be expected with some frequency, for a defendant often will transform his resentment at being prosecuted into the ascription of improper and malicious actions to the State's advocate." *Imbler,* 424 U.S. at 425. However, "[a]bsolute immunity is designed to free the judicial process from the harassment and intimidation associated with litigation." *Burns,* — U.S. at —, 111 S. Ct. at 1943. "The crucial question, then, is how closely associated a prosecutor's challenged activities are with the judicial process." *McSurely,* 697 F.2d at 319.

■■ Therefore, as a general rule, when a prosecutor's actions are purely investigative, courts have declined to apply absolute immunity. In other words, "a prosecutor receives absolute immunity only when he acts as an advocate; that is, in his role as a participant in the judicial phase of the criminal process." *Id.; see, e.g., Burns,* — U.S. at —, 111 S. Ct. at 1942–45 (no absolute immunity of prosecutor who gives police advice during investigation); *Barbera v. Smith,* 836 F.2d 96, 101 (2d Cir. 1987) (prosecutor's disclosure of a witness's identity that led to witness's death not entitled to absolute immunity

when made in investigative stage of proceedings), *cert. denied,* 489 U.S. 1065 (1989); *Robinson v. Via,* 821 F.2d 913, 918–19 (2d Cir. 1987) (no absolute immunity when prosecutor assists in the execution of a search and seizure); *Powers v. Coe,* 728 F.2d 97, 103 (2d Cir. 1984) (no absolute immunity for prosecutor's decision to authorize or direct use of wiretaps); *McSurely,* 697 F.2d at 319–21 (no absolute immunity for prosecutor who knowingly participates in unconstitutional public meeting, prepares flagrantly unconstitutional search and arrest warrants, participates in illegal raid, transfers illegally seized documents, and disseminates documents in violation of court order); *United States v. Heldt,* 668 F.2d 1238, 1276 (D.C. Cir. 1981) (no absolute immunity for prosecutorial functions that are essentially investigative or administrative), *cert. denied,* 456 U.S. 926 (1982); *Marrero v. City of Hialeah,* 625 F.2d 499, 505–06 (5th Cir. 1980) (no absolute immunity for participating in allegedly illegal raid and allegedly making defamatory statements unrelated to judicial proceedings), *cert. denied,* 450 U.S. 913 (1980).

▆ When, however, the complained of acts are intimately related to initiating and pursuing judicial proceedings "so as to be called an advocacy function," *Kutilek v. Gannon,* 766 F. Supp. 967, 972 (D. Kan. 1991), absolute immunity attaches. *See Burns,* — U.S. at —, 111 S. Ct. at 1939. Absolute prosecutorial immunity has been found, for example, "in cases involving the initiation of a prosecution, or the indictment or the filing of charges against an individual." *Schrob,* 948 F.2d at 1410; *see id.* at 1410–20 (absolute immunity for prosecutor acting as advocate in civil proceedings, for deciding to seek seizure warrant, and for statements made in civil judicial proceeding; but only qualified immunity for mismanaging seized property, for negotiating release of liability, and for making false statements to press); *Brummett v. Camble,* 946 F.2d 1178, 1182 (5th Cir. 1991) (prosecutors absolutely immune from suit for malicious prosecution for allegedly bringing charges motivated by personal interest), *cert. denied,* — U.S. —, 112 S. Ct 2323 (1992); *Wilkinson v. Ellis,* 484 F. Supp. 1072, 1082, 1084–85 (E.D. Pa. 1980) (absolute immunity for false statements if closely related to ongoing prosecution, involving legal judgment, made in advocatory role; but only qualified immunity for destruction of evidence).

▆ The touchstone is whether there is a sufficient nexus between the prosecutor's alleged misconduct and the judicial phase of the prosecution. *See, e.g., Grant v. Hollenbach,* 870 F.2d 1135, 1138–39 (6th Cir. 1989) (prosecutor entitled to absolute immunity for deci-

sion to investigate a criminal charge); *Gobel v. Maricopa County*, 867 F.2d 1201, 1204 (9th Cir. 1989) (actions of prosecutor involving preparation of case absolutely immune even if actions could be characterized as "investigative" or "administrative"); *Marx v. Gummbinner*, 855 F.2d 783, 792 (11th Cir. 1988) (prosecutor shielded by absolute immunity for investigation necessary to prepare case, such as interviewing victim and interviewing witnesses before presenting them to grand jury).

We hold that prosecutorial immunity exists within the rubric of judicial immunity and is absolute when functionally related to the initiation of criminal process or to the prosecution of criminal charges.

In the present case, the plaintiffs assert that the defendant acted negligently or recklessly in his investigation of the underlying allegations of sexual abuse. As a result, the plaintiffs state that they were wrongfully charged with the felonious sexual assault of A

> "causing them to incur substantial legal bills to defend themselves, and that they were caused to suffer great mental anguish and emotional harm, lost wages and business income, great and permanent injury to their reputations, and great and permanent injury to their earning capacities . . . ."

The injuries alleged all flow from the initiation of criminal proceedings against the plaintiffs following the grand jury's return of an indictment. There is no allegation that the plaintiffs were harmed by the defendant's investigation, as such. Each element of damages set forth in the writ is a direct result of the defendant's decision to initiate criminal proceedings by seeking an indictment. *See Rose v. Bartle*, 871 F.2d 331, 347 (3d Cir. 1989) (plaintiffs may not recover for illegal conspiracy when damages flow from malicious prosecution from which prosecutor absolutely immune). The decision to indict, even when based on an incomplete investigation, is clearly within the scope of absolute immunity. *See Schrob*, 948 F.2d at 1416 (absolute immunity for prosecutor seeking seizure warrant without adequate investigation).

This decision reflects our judgment that prosecutors should be able to pursue criminal charges absent fear that prosecuting the wrong individual, or the right individual upon the wrong basis, could lead to having to defend a civil action, thus deflecting the prosecutors' energies from the task at hand. The price can be high. The judicial process may very well ensnare the wrong individual, or pro-

ceed on facts that will be disproved, resulting in damage to the accused's pocketbook, reputation, business, or family. That price must be paid to ensure the proper functioning of our criminal justice system.

■■■ We hold that the defendant was entitled to absolute immunity for his actions at issue in the negligence count of this case, and therefore that the plaintiffs have failed to state a cause of action. *Provencal*, 132 N.H. at 745, 571 A.2d at 278 ("trial court must determine whether . . . factual assertions would be sufficient to support the ultimate legal conclusions upon which any recovery must rest").

■■■ We next address the plaintiffs' argument that the defendant is not entitled to absolute immunity for malicious prosecution or conspiracy to commit malicious prosecution. Specifically, the plaintiffs suggest that we apply the functional analysis of *Imbler*, which they contend will demonstrate that it was the defendant's actions in his role as investigator that gave rise to their cause of action. We disagree. As set forth above, we hold that the defendant's alleged misdeeds occurred while in the act of initiating a prosecution. Although we recognize the tort of malicious prosecution, *Rollins*, 129 N.H. at 687, 533 A.2d at 332, it is well settled "that at common law prosecutors were immune from suit[ ] for malicious prosecution . . . ." *Burns*, — U.S at —, 111 S. Ct. at 1938; *see also* RESTATEMENT (SECOND) OF TORTS § 656, at 414–15 (1977) ("A public prosecutor acting in his official capacity is absolutely privileged to initiate, institute, or continue criminal proceedings.").

The plaintiffs also contend that the court's alternative basis for dismissing their malicious prosecution counts, that a grand jury indictment establishes probable cause, was error. Because we hold that the defendant is absolutely immune from suit for malicious prosecution, we need not decide this issue.

The final issue raised on appeal is whether the court abused its discretion in not permitting the plaintiffs to amend their writ. The plaintiffs sought leave to amend their writ "to make clear" that the damages alleged arose due to the defendant's actions as an investigator, not as a prosecutor.

■■■■ It is within the trial court's sound discretion to deny a motion to amend. *Real Estate Planners v. Town of Newmarket*, 134 N.H. 696, 699, 597 A.2d 78, 80 (1991). While amendment of pleadings is liberally permitted, we will not overturn the denial of such a request absent an abuse of discretion. *Attorney General v. Morgan*,

132 N.H. 406, 408, 566 A.2d 1072, 1074 (1989). It is within "the trial court's discretion . . . to deny a motion for leave to amend where the proposed amendment does not cure the defect in the writ." *LaRoche, Adm'r. v. Doe*, 134 N.H. 562, 568, 594 A.2d 1297, 1302 (1991).

 The trial court did not abuse its discretion in denying the plaintiffs leave to amend their writ. The amendment that the plaintiffs seek would have the effect of essentially placing form over substance; they wish to merely label the defendant's actions as "investigative." The proposed amendment does not "make clear" that the damages they allegedly suffered occurred as a result of the defendant's investigation of the underlying matter. It ignores the fundamental fact that the injuries of which they complain resulted from the initiation of the prosecution.

 The plaintiffs refer in their brief to alleged violations of their rights to access to our courts provided by part I, article 14 of our State Constitution and to equal protection under an unspecified provision of that constitution. The record discloses no constitutional claim having been asserted below, and the notice of appeal makes no claim of violation of constitutional rights. Under these circumstances we hold that the constitutional issues have not been preserved for appeal. *See State v. Dellorfano*, 128 N.H. 628, 632, 517 A.2d 1163, 1166 (1986); Sup. Ct. R. 16(3)(b).

*Affirmed.*

All concurred.