Merrimack
No. 92-771

ERIN P. GOULD

v.

DIRECTOR, NEW HAMPSHIRE DIVISION OF MOTOR VEHICLES

March 22, 1994

*Robert J. Moses*, of Amherst, by brief and orally, for the plaintiff.

*Jeffrey R. Howard*, attorney general (*William C. McCallum*, assistant attorney general, on the brief, and *Ann Larney*, assistant attorney general, orally), for the defendant.

THAYER, J.   The director of the New Hampshire Division of Motor Vehicles appeals the decision of the Superior Court (*McHugh*, J.) awarding the plaintiff, Erin P. Gould, attorney's fees for her appeal from a default judgment entered against her by the division and for her pre-appeal efforts to have the default vacated by the division. The defendant argues that the award of attorney's fees based upon actions taken by a State official acting in his quasi-judicial capacity violates both the doctrines of sovereign immunity and of quasi-judicial immunity. Because we reverse on the basis of quasi-judicial immunity, we do not reach the issue of sovereign immunity.

In late 1991, after reviewing Gould's motor vehicle record, the division commenced proceedings to certify her as an habitual offender. The division had difficulty in obtaining personal service on Gould, as required by law, but ultimately did so and scheduled a hearing for

February 24, 1992. Gould retained counsel, who successfully requested a series of continuances. Ultimately, a hearing was scheduled for July 13, 1992, before hearings officer Peter Ramsey. On July 10, Gould's counsel requested yet another continuance, which was granted. At that time, however, Ramsey informed Gould's counsel that, as had been required with respect to several of the other continuances granted to Gould, she would be required to appear personally to sign the continuance so that the division's records would show that she had actual notice of the new date. Unfortunately, sometime between July 10 and 13, Ramsey was injured in an automobile accident which prevented his handling his scheduled hearings on July 13. Hearings examiner Edward Coffey was assigned to cover the cases in his stead.

Prior to the scheduled hearing time of eleven o'clock a.m., Gould's mother telephoned the division and left the message that Gould would be unable to appear on that day to sign the required continuance notice, but that she would appear the next week to do so. Coffey received this message. Because neither Gould nor her counsel appeared at the scheduled hearing time, however, Coffey entered a default judgment and issued an order certifying Gould as an habitual offender. A week later, when Gould was at the division for an unrelated reason, she had occasion to speak with Coffey and surrendered her driver's license at his request.

Several days later, Gould's counsel telephoned Coffey to argue that the default should not have been entered because the continuance had been granted by Ramsey on July 10. Coffey refused to reconsider the default judgment, stating in a letter to Gould's counsel that he believed the continuance to have been expressly conditioned upon Gould's appearance to sign the notice. Gould appealed to the superior court pursuant to RSA 262:25 (1993).

The superior court determined that Coffey should not have issued the default, finding that "[n]o fair-minded person would issue a default under these circumstances without, at the very least, checking with the person who had been originally assigned to hear the case to see if there was any truth to the continuance message." The court also found that Coffey's actions, including refusing to reconsider the default, "reflect the fact that his mind was forever closed to the possibility that he had made a mistake. They show that his sole goal was to justify his defaulting of the plaintiff no matter what the cost in terms of time or money." The court granted Gould attorney's fees incurred beginning with her counsel's first attempt to have the division reconsider the default, finding that the fees were "unnecessarily

incurred because of the refusal of the division to correct its error in granting the continuance." The division requested reconsideration of the court's award of attorney's fees based on quasi-judicial immunity and sovereign immunity. The court denied this motion and allowed Gould additional fees for responding to the motion to reconsider.

We give deference to a trial court's ruling on attorney's fees. *Adams v. Bradshaw*, 135 N.H. 7, 16, 599 A.2d 481, 487 (1991), *cert. denied*, 112 S. Ct. 1560 (1992). Moreover, where, as in this case, there is an "absence of a taped or stenographic record [of the proceedings below], we must assume that the evidence presented supported the trial court's findings, and our review is limited to legal errors apparent on the face of the record." *Rix v. Kinderworks Corp.*, 136 N.H. 548, 553, 618 A.2d 833, 836 (1992) (quotation omitted). Here, however, we find that the trial court erred as a matter of law in awarding attorney's fees against the governmental employer of an official acting in his quasi-judicial capacity.

The plaintiff argues that the imposition of attorney's fees stands on a different footing than does a claim for damages against a State official. The West Virginia Supreme Court of Appeals addressed this issue in *Pritchard v. Crouser*, 332 S.E.2d 611 (W. Va. 1985). It noted that the United States Supreme Court had allowed attorney's fees in certain narrow cases against judicial officers based upon a statutory exception to immunity created by 42 U.S.C. § 1988, *see Pulliam v. Allen*, 466 U.S. 522, 543 (1984) ("It is for Congress, not this Court, to determine whether and to what extent to abrogate the judiciary's common-law immunity."). Finding no analogous exception under its own State law, the West Virginia court declined to allow attorney's fees against a member of the magistrate court who arbitrarily refused to recuse himself from a case in which he was charged with personal bias. *Pritchard*, 332 S.E.2d at 618. In so doing, the court aptly noted that the proper remedy against a judicial official for his actions taken in that capacity is a combination of judicial review and of inter-system curbing of arbitrary or lawless behavior, but "not a fine, no matter how the fine may be characterized, and no matter how insignificant the sum." *Id.*; *cf. Pulliam*, 466 U.S. at 544–45 (Powell, J., dissenting) (award of attorney's fees against judge based upon her decision "poses the same threat to independent judicial decision-making whether it be labeled 'damages' . . . or 'attorney's fees'"). We find similarly no abrogation of judicial immunity in New Hampshire that would allow for the differentiation which the plaintiff here urges. Thus, we will consider the award of attorney's fees against a governmental official for actions taken in his quasi-judicial capacity as though it were the award of any other sort of penalty or damages.

From the beginning of New Hampshire's recorded jurisprudence, we have held that "[a]ll judicial officers, when acting on subjects within their jurisdiction, are exempted from civil prosecution for their acts." *Evans v. Foster*, 1 N.H. 374, 377 (1819).

> "The doctrine of quasi-judicial immunity has long been recognized in this State, and has been explained as the rule of public policy which protects judicial officers and those exercising judicial functions . . . from liability in actions of tort for wrongs committed by them when acting in that capacity. It has been repeatedly decided in this state that when an officer or a board is called upon to pass upon evidence and decide, their conclusion cannot be collaterally attacked, and that they are not liable to answer in a suit for their action. The reason given in the cases is that such action is judicial."

*Shargal v. N.H. Bd. of Psychologists*, 135 N.H. 242, 245, 604 A.2d 559, 561–62 (1992) (emphasis, quotations, and citations omitted). Where immunity applies we do not look to the motives of the immune official—the "immunity applies even when the judge is accused of acting maliciously and corruptly." *Pierson v. Ray*, 386 U.S. 547, 554 (1967); *see Sweeney v. Young*, 82 N.H. 159, 164, 131 A. 155, 158 (1925). Moreover, the governmental employer of a quasi-judicial official enjoys the same immunity as does the official. *State v. Dexter*, 136 N.H. 669, 672, 621 A.2d 435, 437 (1992).

To determine the scope of immunity to be afforded in a specific situation, we examine the act complained of, not merely the title of the actor. *Belcher v. Paine*, 136 N.H. 137, 144, 612 A.2d 1318, 1323 (1992). Absolute immunity will be afforded only to "those actions that are quasi-judicial in nature." *Id.* at 145, 612 A.2d at 1323. Thus, in *Dexter*, the prosecutor was absolutely immune from an award of attorney's fees for all conduct functionally related to the actual prosecution of a case, *see Dexter*, 136 N.H. at 673, 621 A.2d at 437, but he was not necessarily immune from liability for holding a press conference, an action arguably not within his quasi-judicial role. *Id.*

Gould argues that "the challenged activities in this case have virtually nothing to do with the judicial process," but rather that Coffey's refusal to vacate the default was merely an administrative refusal to implement examiner Ramsey's earlier discretionary act of granting the continuance.

The trial court acknowledged that Coffey was acting in a quasi-judicial capacity, but relied on *Harkeem v. Adams*, 117 N.H. 687, 377 A.2d 617 (1977), to deny the division's motion to reconsider the

award of attorney's fees, affirming his original determination that Coffey's actions justified the order. In *Harkeem*, however, we did not address the question of quasi-judicial immunity that has been directly raised in this case. We accept the trial court's determination that Coffey acted egregiously, but, as urged by the division, Coffey's quasi-judicial function as a hearings officer requires further analysis.

Actions by administrative agencies are quasi-judicial if the adjudicatory process, provided by statute, requires notification of the parties involved, a hearing including receiving and considering evidence, and a decision based upon the evidence presented. *See Winslow v. Holderness Planning Board*, 125 N.H. 262, 266–67, 480 A.2d 114, 116 (1984). The division is authorized by statute to conduct hearings for certifying habitual offenders. *See* RSA 262:19 (1993). To implement its statutory authority pursuant to RSA 541-A:2 (Supp. 1993), the division has adopted regulations that provide the procedure for conducting hearings. *See* N.H. ADMIN. RULES, Saf-C ch. 200. The regulations provide for notice to the parties, the scheduling of hearings and continuances thereof, assignment and transfer of cases amongst the hearings officers, and for the authority of hearings examiners to schedule hearings, make decisions, enter default judgments, and grant or refuse to reopen a case to reconsider a default decision. *See* N.H. ADMIN. RULES, Saf-C 202.02 to 202.23. Therefore, Coffey's entry of default judgment and subsequent refusal to reopen the case, although erroneous, was "part of an adjudicatory process, provided for by statute, and thus quasi-judicial in nature." *Shargal*, 135 N.H. at 246, 604 A.2d at 561; *see Sibson v. State*, 111 N.H. 305, 308, 282 A.2d 664, 666 (1971); *see also Pritchard*, 332 S.E.2d at 614. Thus, the trial court's order that the division pay Gould's attorney's fees was in error. Given our ruling on this matter, the plaintiff's motion for double costs is denied.

*Award of attorney's fees reversed.*

All concurred.