Williamson v. Odyssey House            CV-99-561-JD  11/01/00

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


Marsha Williamson,
Guardian of Carmen Griffin

    v.                                  Civil No. 99-561-JD
                                        Opinion No. 2000 DNH 237
Odyssey House, Inc.


O R D E R


The plaintiff, Marsha Williamson, Guardian of Carmen Griffin, brings a tort action against Odyssey House, Inc., where Carmen Griffin resided by court order when she was injured as the result of her attempted suicide.  Odyssey House moves for summary judgment, contending that it is protected by absolute judicial immunity and that it is not liable for Griffin's injuries from her attempted suicide.  The plaintiff objects to summary judgment.


Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The record evidence is taken in the light most favorable

to the nonmoving party.  See Zambrana-Marrero v. Suarez-Cruz, 172 F.3d 122, 125 (1st Cir. 1999).  "[A]n issue is 'genuine' if the evidence presented is such that a reasonable jury could resolve the issue in favor of the nonmoving party and a 'material' fact is one that might affect the outcome of the suit under governing law."  Fajardo Shopping Ctr. v. Sun Alliance Ins. Co., 167 F.3d 1, 7 (1st Cir. 1999).  Summary judgment will not be granted as long as a reasonable jury could return a verdict in favor of the nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).


## Background

Odyssey House, Inc. operates the Adolescent Therapeutic Center in Hampton, New Hampshire, which is a long-term residential facility for adolescents who are emotionally disturbed and who have substance abuse problems.  Carmen Griffin was ordered into a placement at Odyssey House on March 3, 1997, when she was fifteen years old, based on the recommendation of her Juvenile Services Officer.  Griffin had a very troubled history, and she was placed at Odyssey House because of her substance abuse and extreme behavior, including suicidal and self-abusive threats and actions.

Within days of her placement at Odyssey House, Griffin was

2

put on a twenty-four hour watch because of her extreme behavior. Griffin continued to demonstrate assaultive and self-abusive behavior throughout her placement at Odyssey House. Her Juvenile Services Officer recommended that she be committed to the New Hampshire Youth Development Center ("YDC"). Odyssey House staff opposed her removal, and the court continued her placement at Odyssey House.

At the end of June when Griffin said that she felt suicidal, she was transferred to the Portsmouth Pavilion where she was hospitalized for a week. In August, she was repeatedly on protection watches because of suicide threats, wrapping cords or scarves around her neck leaving evidence of strangulation, "cheeking" her medications, and attempting to leave the facility. Despite the concerns about her behavior and her safety, her psychiatrist recommended that she stay at Odyssey House with a contract to control her behavior.

In September, Griffin's placement was again reviewed in court due to her extreme behavior and her Juvenile Services Officer again recommended that she be committed to YDC. Odyssey House staff continued to recommend her placement there through September 22, 1997, and the court continued Griffin's placement at Odyssey House. During September, Griffin exhibited self-abusive behavior and suicidal thoughts. On September 24, Griffin

3

intentionally choked herself and later barricaded herself in her room. Griffin was informed that she would not be able to have a home pass that weekend or participate in a meeting that night because of her behavior. She was not seen by a therapist or put on a precaution watch. An hour after the barricading incident, she had again barricaded herself in her room and was then found hanging by a belt from the sprinkler fixture in her room. As a result of injuries caused by the suicide attempt, Griffin remains in a persistent vegetative state.

## Discussion

Odyssey House moves for summary judgment on the grounds that it is entitled to judicial immunity and that it is not liable for Griffin's attempted suicide. Marsha Williamson, Griffin's guardian, contends that judicial immunity does not apply to Odyssey House in these circumstances and that Odyssey House may be liable for Griffin's attempted suicide because of its special custodial relationship with Griffin.

New Hampshire law provides immunity from liability to judicial officers and those who are exercising judicial functions for their actions taken in their judicial or quasi-judicial capacity. See Gould v. Director, N.H. Div. of Motor Vehicles, 138 N.H. 343, 346 (1994). Judicial immunity depends upon the

4

nature of the actions, not the title of the actor, and only those actions that are judicial or quasi-judicial are protected by immunity.  See id.  Other states have recognized that court-appointed experts, such as psychologists, may be protected by quasi-judicial immunity for their actions taken within the scope of their appointment because in that capacity they are acting as an arm of the court.  See, e.g., Diehl v. Danuloff, 2000 WL 1114341, at *6 (Mich. App. Oct. 3, 2000); Politi v. Tyler, 751 A.2d 788, 796 (Vt. 2000) (Morse, J., dissenting); Delcourt v. Silverman, 919 S.W.2d 777, 786 (Tex. App. 1996).

In this case, at the very least, a factual dispute remains as to whether Odyssey House was acting in a quasi-judicial capacity while Griffin was a resident and when she attempted suicide.  The facts of record suggest that Griffin was ordered to the placement at Odyssey House, not that Odyssey House was serving as a court-appointed expert in her case.  In its capacity as a residential placement for Griffin, Odyssey House was serving the same function as any other court-ordered placement, such as a placement at YDC.  Based on the record facts, Odyssey House has not demonstrated that it is entitled to quasi-judicial immunity.

Odyssey House also argues that it is not liable for Griffin's attempted suicide because under New Hampshire law a negligence cause of action is not recognized for the suicide of

5

another.  See McLaughlin v. Sullivan, 123 N.H. 335, 337 (1983).
Odyssey House acknowledges that an exception to the nonliability
rule may exist in the circumstances of a prison and prisoner
relationship, but it argues that liability will only adhere if
the prison shows reckless disregard for the safety of the
prisoner.  Odyssey House contends that it was not a prison and
did not show reckless disregard for Griffin's safety.

An exception to the general rule of nonliability for
suicides is recognized "where the defendant has a specific duty
of care to prevent suicide,' arising from the defendant's
'special relationship with the suicidal individual.'" Bruzga v.
PMR Architects, P.C., 141 N.H. 756, 758 (1997) (quoting
McLaughlin, 123 N.H. at 338).  That exception applies to "(1)
institutions such as jails, hospitals and reform schools, having
actual physical custody of and control over persons; and (2)
persons or institutions such as mental hospitals, psychiatrists
and other mental-health trained professionals, deemed to have a
special training and expertise enabling them to detect mental
illness and/or the potential for suicide." McLaughlin, 123 N.H.
at 338; accord Murdock v. City of Keene, 137 N.H. 70, 72 (1993).
In the special relationship context, the custodial party has a
duty to prevent the suicide of one in custody when the custodial
party "has actual knowledge of facts indicating that the prisoner

6

is likely to commit suicide" and "fails to take reasonable measures to prevent such an attempt."  Id. at 73.

In this case, the facts of record suggest that Odyssey House would likely fall into the special relationship exception to the general rule precluding liability for a suicide.  In addition, sufficient facts exist in the record to create a genuine dispute as to whether Odyssey House had sufficient information of the likelihood that Griffin would attempt suicide to require reasonable measures to prevent such an attempt.  Therefore, a trialworthy issue remains as to Odyssey House's liability.


## Conclusion

For the foregoing reasons, the defendant's motion for summary judgment (document no. 11) is denied.

SO ORDERED.


_____
Joseph A. DiClerico, Jr.
District Judge

November 1, 2000

cc:  Edgar D. McKean III, Esquire
     Donald E. Gardner, Esquire

7