**Mario L. SIMS, Sr., Plaintiff,**

v.

**Joseph E. KERNAN, individually and in his official capacity of Lieutenant Governor of the State of Indiana, Frank O'Bannon, individually and in his official capacity, Michael P. Barnes, individually and in his official capacity as the elected prosecutor of St. Joseph County, John Marnocha, individually and in his official capacity as the chief deputy prosecutor of St. Joseph County, H. John Okeson, individually and in his official capacity as the Clerk of the Indiana Supreme Court, Linda Scopelitis, individually and in her official capacity as the Clerk of St. Joseph County, Chief Judge Randall Shepard, in his official capacity as Chief Judge of the Indiana Supreme Court and as a member of the judicial nominating commission, the County of St. Joseph, and the State of Indiana, for purposes of injunctive relief, and damages where appropriate by law, and Judge Sanford Brook, individually, and in his official capacity as Judge, St. Joseph Superior Court, Defendants.**

No. 3:98–CV–0539–AS.

United States District Court,
N.D. Indiana,
South Bend Division.

Dec. 4, 1998.

---

Mario L Sims, Westville, IN, for Mario L Sims, plaintiff pro se.

### MEMORANDUM AND ORDER

ALLEN SHARP, District Judge.

Mario Sims, a prisoner confined at the Westville Correctional Facility, submitted a complaint under 42 U.S.C. § 1983. Mr. Sims also raises claims under 42 U.S.C. § 1981, 42 U.S.C. § 1985(3), 42 U.S.C. § 1986, and 42 U.S.C. § 2000. In addition to his federal claims, Mr. Sims invokes the pendent jurisdiction of this court and United Nations Resolution 1 (XXIV) of the subcommission on the prevention of discrimination and protection of minorities.

The court granted Mr. Sims's request to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915(b). Under 28 U.S.C. § 1915A, the court must review the merits of a prisoner's complaint and dismiss it if the allegation of poverty is untrue or if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. Dismissal of a complaint, or any portion of a complaint, for failure to state a claim upon which relief can be granted is provided for in Federal Rule of Civil Procedure 12(b)(6). The court will apply the same standard under § 1915A as when addressing a motion under Rule 12(b)(6).

A complaint states no actionable claim when it appears beyond doubt that the plaintiff can prove no set of facts consistent with his complaint that would entitle him to relief. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984), *citing Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Panaras v. Liquid Carbonic Indus. Corp.*, 74 F.3d 786, 791 (7th Cir.1996). When reviewing *pro se* complaints, the court must employ standards less stringent than if the complaint had been drafted by counsel. *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). The court must accept the well-pleaded factual allegations as true, and "construe such allegations in favor of the plaintiff." *Sherwin Manor Nursing Ctr. v. McAuliffe*, 37 F.3d 1216, 1219 (7th Cir.1994); *cert. denied*, 516 U.S. 862, 116 S.Ct. 172, 133 L.Ed.2d 113 (1995). Although ambiguities in the complaint should be interpreted in the plaintiff's favor, *Canedy v. Boardman*, 16 F.3d 183, 188 (7th Cir.1994), the court need not strain to find inferences favorable to the plaintiff which are not apparent on the face of the complaint, *Coates v. Illinois State Bd. of Educ.*, 559 F.2d 445, 447 (7th Cir.1977), or

ignore factual allegations set forth in the complaint that undermine the plaintiff's claim. *City Nat'l Bank of Florida v. Checkers, Simon & Rosner,* 32 F.3d 277, 281 (7th Cir.1994).

Mr. Sims is committed to the Indiana Department of Correction, serving a twenty-seven year sentence for ·breaking into the home of his estranged wife and sexually assaulting her at the point of a heroin-filled syringe and a pistol. Mr. Sims asserts that his conviction was obtained as a result of perjured testimony and tampered evidence. Mr. Sims contends that he is actually innocent of the charges against him, and states that he was at a studio taping his television show at the time the alleged assault on his wife was supposed to have occurred.

Mr. Sims further asserts that after improperly obtaining his conviction, some of the defendants obstructed his efforts to obtain judicial review of his conviction in the state courts. According to the complaint, Mr. Sims filed a petition for post-conviction relief and St. Joseph Superior Court Judge Sanford Brook allegedly entered several orders adverse to Mr. Sims, even though he had recused himself from any participation in Mr. Sims's criminal case and had no jurisdiction over the case. Mr. Sims, who states that he is an African–American, alleges that he has been the victim of a racially based conspiracy.

Mr. Sims seeks to invoke the court's jurisdiction based on a variety of federal statutes and other sources. This court does not have jurisdiction over this case based on a United Nations subcommittee resolution, and the plaintiff's allegations do not appear to implicate 42 U.S.C. § 2000 *et seq.,* which deals with public accommodations and employment. Jurisdiction is clear, however, under 42 U.S.C. § 1983, which provides that:

> Every person who, under color or any statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law....

Mr. Sims also asserts a claim under 42 U.S.C. § 1981, which provides that "(a)ll persons within the jurisdiction of the United States shall have the same right to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses and exactions of every kind, and to no other." The elements of a § 1981 claim are: the plaintiff is a member of a racial minority; the defendant(s) intended to discriminate on the basis of race; and that discrimination concerned one or more of the activities enumerated in the statute. *Mian v. Donaldson, Lufkin & Jenrette Securities Corp.,* 7 F.3d 1085 (2d Cir.1993). Mr. Sims's allegation that he was maliciously prosecuted because of his race and his allegation that he was denied access to the courts in order to challenge his conviction, arguably state a claim upon which relief can be granted under § 1981. *See generally Evans v. McKay,* 869 F.2d 1341 (9th Cir.1989); *Bouquett v. Clemmer,* 626 F.Supp. 46 (S.D.Ohio 1985).

Mr. Sims also asserts a claim under Section 1985(3), which deals with racially motivated conspiracies to interfere with civil rights. To state a § 1985(3) claim, the plaintiff must "allege that he was the victim of a conspiracy against him based on some 'class based animus.'" *Malsh v. Austin,* 901 F.Supp. 757 (S.D.N.Y.1995). "A cause of action under § 1985(3) requires a plaintiff to allege (1) a conspiracy; (2) for the purpose of depriving a person or class of persons of the equal protection of the laws or equal privileges and immunities under the law; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property or a deprivation of a right or privilege of a citizen of the United States." *Traggis v. St. Barbara's Greek Orthodox Church,* 851 F.2d 584, 586–87 (2d Cir.1988). Section 1985(3) "does not by its own terms require state action for a violation," *Peavey v. Polytechnic Institute of New York,* 775 F.Supp. 75, 79 (1991), citing *Griffin v. Breckenridge,* 403 U.S. 88, 97, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971), but "when the right which the conspiracy allegedly violates is a right protected

only against interference from the state, a violation of the section cannot be alleged absent state action." *Peavey v. Polytechnic Institute of New York*, 775 F.Supp. 75 at 79, *citing United Brotherhood of Carpenters & Joiners v. Scott*, 463 U.S. 825, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983). Mr. Sims's allegations are sufficient to implicate § 1985(3).

■ Mr. Sims also brings a claim pursuant to 42 U.S.C. § 1986, which provides that "every person having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses to do so, if such wrongful act be committed, shall be liable to the party injured ... for all damages caused by such wrongful act ..." A cause of action under section 1986 "is premised on a violation of section 1985." *Rhodes v. Mabus*, 676 F.Supp. 755, 760 (S.D.Miss.1987). Section 1986 allows a suit to be brought against persons who are not members of the conspiracy but who are aware of it. *See Hampton v. City of Chicago*, 484 F.2d 602, 610 (7th Cir.1973), *cert. denied*, 415 U.S. 917, 94 S.Ct. 1413, 39 L.Ed.2d 471 (1974) (attempted suit against Mayor and Police Superintendent on theory that they knew of a conspiracy by their subordinates against the plaintiffs). If all defendants are alleged to be members of the conspiracy, then there would appear to be no valid § 1986 claim.

Mr. Sims is ambiguous as to whether all defendants actively participated in the conspiracy against him. In ¶ 16 of his complaint, he alleges at one point that "the defendants ... conspired or failed to prevent the conspiracy" against him. In another portion of the same paragraph, however, Mr. Sims alleges that "the named defendants combined, confederated, agreed and conspired to use their position and authority in furtherance of the conspiracy." Taking the complaint as a whole, the court concludes, for the purposes of this memorandum, that Mr. Sims intends to allege that some defendants actively conspired against him while others merely acquiesced to the conspiracy by failing to take action to stop it.

In the caption of his complaint, Mr. Sims states that he is suing the State of Indiana "For the purposes of injunctive relief, and damages where appropriate by law." In the body of his complaint, he alleges that "(t)he State of Indiana has failed to follow its own law and has failed to ensure the equal protection of the law in this cause."

■ Mr. Sims's claims against the State of Indiana run afoul of the Constitution's Eleventh Amendment, which prohibits suits against a State by its own citizens. *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890); *Welch v. Texas Dept. of Highways and Public Transportation*, 483 U.S. 468, 107 S.Ct. 2941, 97 L.Ed.2d 389 (1987). In regard to injunctive relief, the Supreme Court has stated that "it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law." *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 106, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). A State may elect to waive its Eleventh Amendment immunity, but Indiana has not done so. *Meadows v. State of Indiana*, 854 F.2d 1068, 1069 (7th Cir.1988). Moreover, even if the Eleventh Amendment did not preclude the plaintiff's claims against the state, § 1983 claims may only be brought against "persons." States, and state agencies, are not "persons" within the meaning of § 1983. *Will v. Michigan Department of State Police*, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989).

■ Mr. Sims also apparently seeks to sue state officials for damages in their official capacities. The Eleventh Amendment, however, precludes an action against these defendants for damages in their official capacities. *Kentucky v. Graham*, 473 U.S. 159, 167, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *Meadows v. State of Indiana*, 854 F.2d at 1069.

■ Mr. Sims sues St. Joseph County, alleging that the county "has an unwritten policy that its judges will not rule against the county or county police." The Eleventh Amendment does not protect municipalities from being sued in federal court in their official capacities, *Monell v. Dept. Of Social Services of City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), and a suit a county based on its policy may be valid. *Pembaur v. City of Cincinnati*, 475

U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). But judges of Indiana's circuit, superior, and county courts are not county officials, they are judicial officers of the state judicial system. *Pruitt v. Kimbrough*, 536 F.Supp. 764, 766 (N.D.Ind.1982), *aff'd* 705 F.2d 462 (7th Cir.1983). Accordingly, Mr. Sims may not sue St. Joseph County based on the actions or inactions of judges of the St. Joseph Circuit or Superior courts.

■ Mr. Sims sues the Governor and Lieutenant Governor of the State of Indiana. The complaint does not allege that Governor Frank O'Bannon has had any personal involvement in the actions that allegedly violated Mr. Sims's constitutional rights. Section 1983 creates a cause of action for damages based on personal liability; a plaintiff must show the defendant's personal involvement or participation, or direct responsibility for the conditions of which he complains. *Rascon v. Hardiman*, 803 F.2d 269, 273 (7th Cir.1986); *Wolf–Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir.1983). The doctrine of *respondeat superior*, under which a supervisor may be held liable for an employee's actions, has no application to § 1983 actions. *Adams v. Pate*, 445 F.2d 105, 107 (7th Cir.1971).

■ Mr. Sims does not specifically allege that Governor O'Bannon was a member of the conspiracy against him, and he states no facts that would support an inference that the governor had actual knowledge of the conspiracy against him by St. Joseph County and judicial officials. Accordingly, the § 1986 claims against him must be dismissed. *Hampton v. City of Chicago*, 484 F.2d at 610 (bare allegations that Mayor of City and Police Superintendent knew of conspiracy by subordinates held insufficient to state a claim under § 1986).

■ Mr. Sims alleges that Lieutenant Governor Joseph Kernan was personally involved in conspiring against Mr. Sims when he was Mayor of South Bend, that he took acts in furtherance of the conspiracy,[1] and that he continued to act against Mr. Sims even after he was elected to state office. Accordingly, Mr. Kernan is a proper defen-

dant for damages in his individual capacity under §§ 1981, 1983, and 1985(3).

■ Mr. Sims sues Indiana's Clerk of the Supreme and Appellate Courts, John Okeson. According to Mr. Sims, his current wife contacted Mr. Okeson's office on June 11, 1998, "to determine if a special judge had been appointed to rule on the plaintiff's motion [for appointment of a special judge], and was advised that a special judge is routinely appointed within (60) sixty days of the receipt of the praecipe." In July of 1998, Mrs. Sims "again contacted Okeson's office and was advised it would take between (6) months and a year to have a special judge appointed in the cause. The plaintiff's wife was given no reason for the failure to appoint the special judge in the normal time frame." Mr. Sims does not allege that Mr. Okeson had any personal involvement in or knowledge of the conspiracy against him. Mr. Sims also does not allege that Mr. Okeson had any personal knowledge of or involvement in either of the conversations between unidentified members of his staff and Mrs. Sims. In any event, the decision to appoint a special judge resides with Indiana's Supreme Court, not with the clerk of the court.

■ Mr. Sims sues Indiana Supreme Court Chief Judge Randall Shepard, apparently for the failure to appoint a special judge in his post-conviction proceedings in a timely manner. The doctrine of judicial immunity affords state judges absolute immunity for past judicial acts regarding matters within their court's jurisdiction, even if their "exercise of authority is flawed by the commission of grave procedural errors." *Stump v. Sparkman*, 435 U.S. 349, 364, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978). The appointment of a special judge is a judicial act within the jurisdiction of the Indiana Supreme Court.

■ Mr. Sims also sues St. Joseph Superior Court Judge Sanford Brook, alleging that Judge Brook acted outside his jurisdiction when he ruled adversely to Mr. Sims on certain matters in his post-conviction pro-

---

1. According to materials attached to the complaint, Mr. Sims was a constant critic of Mr. Kernan while Mr. Kernan was mayor of South Bend and, on one occasion, sought the opposing party's nomination to run against Mr. Kernan.

ceedings. Because Mr. Sims alleges that Judge Brook acted outside his jurisdiction, the court cannot dismiss the claims against Judge Brook at the pleadings stage based on the doctrine of judicial immunity. "Fed. R.Civ.P. 8 establishes a system of notice pleading," and a complaint may not be dismissed at the pleadings stage "unless no relief could be granted 'under any set of facts that could be proved consistent with the allegations.'" *Nance v. Vieregge,* 147 F.3d 589, 590 (7th Cir.1998), *quoting Hishon v. King & Spalding,* 467 U.S. at 73, 104 S.Ct. 2229.

█ Mr. Sims alleges that St. Joseph County Clerk, Linda Scopelitis, along with Judge Brook, intentionally failed to file his motion for default judgment on the date it was mailed by certified mail and that they failed to timely serve a copy of an order signed by Judge Brook on the plaintiff, in furtherance of the conspiracy against him, thereby prejudicing him. He finally alleges that since 1994, Clerk Scopelitis "has failed to notify the plaintiff of several ruling[s], failed to file motions filed by the plaintiff, and given false or misleading information to those attempting to assist the plaintiff to obtain documents or file motions or pleadings in his behalf." Because Mr. Sims alleges that Clerk Scopelitis was personally involved in actions against him and was a member of the conspiracy against him, he has stated a claim against her that is not subject to dismissal at the pleadings stage.

█ Mr. Sims alleges that St. Joseph Prosecutor Michael Barnes and Deputy Prosecutor John Marnocha violated his federally protected rights by using perjured testimony and tampered evidence in the criminal prosecution against him when they knew he "could not have been in the [victim's] home at that time" the crime was committed. But State prosecutors have absolute immunity for the initiation and pursuit of a criminal prosecution, including presenting the state's case at trial or any other conduct "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman,* 424 U.S. 409, 430, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). "In initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983." *Id.* at 431, 96 S.Ct. 984; *see also Buckley v. Fitzsimmons,* 509 U.S. 259, 269, 113 S.Ct. 2606,

125 L.Ed.2d 209 (1993); *Cleavinger v. Saxner,* 474 U.S. 193, 200, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985). This immunity applies even where the prosecutor acts "maliciously, unreasonably, without probable cause, or even on the basis of false testimony or evidence." *Henry v. Farmer City State Bank,* 808 F.2d 1228, 1238 (7th Cir.1986). Prosecutorial immunity also extends to claims brought pursuant to § 1985 and § 1986. *Snelling v. Westhoff,* 972 F.2d 199 (8th Cir. 1992), *cert. denied* 506 U.S. 1053, 113 S.Ct. 977, 122 L.Ed.2d 132 (1993). The allegations against defendants Barnes and Marnocha involve the initiation and pursuit of a criminal prosecution, and they are entitled to the benefit of prosecutorial immunity.

Mr. Sims's original complaint sought declaratory relief and damages for the alleged violation of his federally protected rights. Mr. Sims has amended his complaint by interlineation, pursuant to Fed.R.Civ.P. 15(a), to seek injunctive relief in regard to the appointment of a special judge in his postconviction proceeding and in other respects. This court, however, declines to intervene in this ongoing state judicial proceeding. The abstention doctrine set forth in *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), requires a federal district court to refrain from interfering with pending state criminal proceedings in deference to principles of equity, comity, and federalism. *Younger v. Harris,* 401 U.S. at 53, 91 S.Ct. 746. Underlying this rule is the assumption that a plaintiff's federal constitutional claims can fairly by vindicated in state court proceedings without federal intrusion, *Grandco Corp. v. Rochford,* 536 F.2d 197, 202 (7th Cir.1976).

While post-conviction proceedings are civil actions, rather than being part of a criminal prosecution, the policy reasons for nonintervention are the same as those advanced in *Younger.* Morover, since *Younger* was first decided, the courts "have applied and expanded upon the abstention doctrine." *Pompey v. Broward County,* 95 F.3d 1543 (11th Cir.1996). Mr. Sims has initiated post-conviction proceedings in the Indiana courts, the appointment of a special judge in such proceedings is within the province of the Indiana

Supreme Court, and Mr. Sims presents no circumstances that would justify this court in intervening in this state court proceeding.

Some of the allegations against defendants Kernan, Brook, and Scopelitis arguably state a claim upon which relief can be granted. To the extent, however, that Mr. Sims seeks damages from them on the grounds that these defendants conspired to, and actually did, have him convicted and imprisoned based on perjured testimony and falsified evidence, his claims appear to be barred, at this time, by the doctrine of *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994):

> In *Heck*, the Court addressed the question of whether a state prisoner may challenge the constitutionality of his criminal conviction in a suit for damages under 42 U.S.C. § 1983. Heck, an Indiana prisoner, brought a § 1983 lawsuit seeking damages, but not injunctive relief or release from custody—on the claim that the defendants, acting under color of state law, had engaged in unlawful acts that lead to his arrest and conviction. *Id.* at ——, 114 S.Ct. at 2368. Believing that the legislative history of § 1983 precluded inmates from using a § 1983 action to challenge the validity of outstanding criminal judgments, the *Heck* court held that if the remedy sought under § 1983 would require a finding or judgment that would render a conviction or sentence invalid, then the § 1983 plaintiff must first "prove that the conviction was reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at ——, 114 S.Ct. at 2372.

*Stone–Bey v. Swihart*, 898 F.Supp. 1287, 1294 (N.D.Ind.1995)

Mr. Sims asserts that he was prosecuted, convicted, and imprisoned based on perjured testimony and falsified evidence. To grant Mr. Sims relief on these claims would require a finding or judgment that his conviction was invalid, and thus would clearly implicate the fact of his conviction. Mr. Sims alleges that he is actually innocent of the charges against him and suggests that the state courts should have granted him a judgment in his petition for post-conviction relief setting aside his conviction. But Mr. Sims does not establish that his conviction has actually been set aside by a court or other tribunal, and his mailing address at the Westville Correctional Facility suggests that it has not been set aside.[2]

■ Because Mr. Sims does not establish that this conviction has been reversed or otherwise set aside, any claims regarding having been convicted and imprisoned based on perjured testimony and falsified evidence are premature. If Mr. Sims is able to have his guilty plea set aside by the state courts or by means of a habeas corpus petition, he may refile his damage claims against defendants Kernan, Brook, and Scopelitis.

Mr. Sims also alleges that defendants Brook and Scopelitis have interfered with his access to the courts for purposes of filing and prosecuting a petition for post-conviction relief. His allegations in this regard are mostly general, rather than specific, though he has cited some specific actions on the part of these defendants. The Seventh Circuit has emphasized that "Fed.R.Civ.P. 8 establishes a system of notice pleading," and that a complaint may not be dismissed at the pleadings stage "unless no relief could be granted 'under any set of facts that could be proved consistent with the allegations.'" *Nance v. Vieregge*, 147 F.3d 589 at 590. Accordingly, the court will permit this claim to proceed against defendants Brook and Scopelitis. Because Mr. Sims alleges that each of these defendants was actually involved in a conspiracy against him, however, the court will dismiss the claims under § 1986.

Although Mr. Sims alleges that Mr. Kernan continued to act against Mr. Sims, after he was elected lieutenant governor, he does

---

**2.** Mr. Sims alleges that "the State of Indiana, by operation of law has defaulted and the facts as set out in the Motion for Default Judgment [filed in state court] show the plaintiff was actually innocent and there was and is insufficient evidence to have gained and sustained the conviction." But merely moving for a default, and having a default judgment entered in a litigant's favor, are two different concepts. Until Mr. Sims's conviction is set aside by order of a court or other authorized tribunal, this court will construe it as still being in effect.

not allege that Mr. Kernan had any involvement in the problems he has had filing and prosecuting his petition for post-conviction relief. Accordingly, the court will dismiss Mr. Kernan from this case with leave to Mr. Sims to replead Mr. Kernan into this action if he has facts that would support an inference that this defendant was involved in the problems he has had filing and prosecuting his petition for post-conviction relief.

Mr. Sims specifically alleges violation of rights protected by the Constitution's First, Eighth, Thirteenth, and Fourteenth Amendments. The portion of his complaint that survived screening, deals with denial of access to the courts.

The Eighth Amendment prohibits punishment that is cruel and unusual, and has no application to denial of access to the courts. The Thirteenth Amendment prohibits slavery and involuntary servitude, which likewise has no direct application to denial of access to the courts. To the extent Mr. Sims asserts that the defendants' actions denied his "right to be free from the badges and incidence of slavery, protected by the Thirteenth Amendment ... This private right of action is enforceable through 42 U.S.C. § 1981, and § 1985(3). However, these statutes define the scope of the cause of action; one cannot try for a broader scope by suing under the Thirteenth Amendment." *Vietnamese Fishermen's Ass'n v. Knights of the Ku Klux Klan,* 518 F.Supp. 993 (S.D.Tex.1981) (citations omitted). Mr. Sims may proceed against defendants Brook and Scopelitis on his First and Fourteenth Amendment claims.

Finally, Mr. Sims seeks to invoke the court's pendent jurisdiction over state law claims. The doctrine of pendent jurisdiction, which has been codified in 28 U.S.C. § 1367, provides that, unless otherwise provided by statute, federal courts "have supplemental jurisdiction over all other claims that are so related to claims in the action ... that they form part of the same case or controversy." Mr. Sims does not assert what state law claims he wishes to proceed on and because so many of Mr. Sims's federal claims have been dismissed, the court will dismiss his pendent jurisdiction claims, with leave to Mr. Sims to replead them with more specificity.

For the foregoing reasons, the court:

(1) **DISMISSES** the plaintiff's claims against the State of Indiana and his official capacity damage claims against state officials based on the Eleventh Amendment; **DISMISSES** his claims for injunctive relief; **DISMISSES** the claims against defendants Frank O'Bannon, John Okeson, and St. Joseph County for failure to state a claim upon which relief can be granted; **DISMISSES** the claims against defendants Randall Shepard, Michael Barnes, and John Marnocha based on judicial and prosecutorial immunity; **DISMISSES** any claims based on 42 U.S.C. § 1986, 42 U.S.C. § 2000 and the United Nations Resolution 1 (XXIV) of the subcommission on the prevention of discrimination and protection of minorities; **DISMISSES** defendant Joseph Kernan from this case with leave to replead defendant Kernan into this action if the plaintiff has facts that would support an inference that defendant Kernan was involved in the problems he has had filing and prosecuting his petition for post-conviction relief; **DISMISSES** the plaintiff's claims pursuant to the Eighth and Thirteenth Amendments; **DISMISSES** the plaintiff's supplemental state law claims with leave to replead them with more specificity; and **DISMISSES** any claims that defendants Sanford Brook, Joseph Kernan, and Linda Scopelitis caused him to be convicted and imprisoned based on perjured testimony and falsified evidence without prejudice to the plaintiff's right to refile his claims against them if he is able to have his conviction set aside or overturned;

(2) **GRANTS** the plaintiff leave to proceed against defendants Sanford Brook and Linda Scopelitis, on his damage and declaratory relief claims, pursuant to 42 U.S.C. §§ 1981, 1983, and 1985(3), that these defendants violated his rights protected by the Constitution's First and Fourteenth Amendment by conspiring against him to deprive him of access to the courts when they interfered with his ability to file and proceed with a petition for post-conviction relief;

3) Finds that the plaintiff has a reasonable opportunity to prevail on the merits and, pursuant to 42 U.S.C. § 1997e(g)(2),

ORDERS that defendants Sanford Brook and Linda Scopelitis respond to the complaint as provided for in the Federal Rules of Civil Procedure; and

(4) DIRECTS the marshals service to effect service of process on defendants Sanford Brook and Linda Scopelitis on the plaintiffs' behalf, and DIRECTS the clerk's office to ensure that a copy of this order is served on these defendants along with the summons, complaint, and first amendment to complaint (as of course).

**IT IS SO ORDERED.**