Mario L. SIMS, Sr., Plaintiff,

v.

John MARNOCHA, in his individual capacity as a lawyer, Linda Scopelitis, individually and in her official capacity as the Clerk of St. Joseph County, St. Joseph County Board of Commissioners, in their individual and official capacities, St. Joseph County, Michael D. Cook, in his official capacity as Special Judge, Karen Freeman–Wilson, in her individual and official capacity as the Attorney General of Indiana, Joseph E. Kernan, in his individual and official capacity as Lt. Governor of the State of Indiana, and Frank O'Bannon, in his individual and official capacity as Governor of the State of Indiana, Defendants.

No. 3:00–CV–0736.

United States District Court, N.D. Indiana, South Bend Division.

Aug. 23, 2001.

1134

Mario L Sims, SCU–Westville, Westville, IN, Pro se.

Wayne E Uhl, Indiana Attorney General, Indianapolis, IN, Richard A Nussbaum, II, Matthew R Kaczmarek, Sopko Nussbaum and Inabnit, South Bend, IN, for John Marnocha, Linda Scopelitis, St Joseph County Board of Commissioners, St Joseph County, Michael D Cook, Karen

Freeman–Wilson, Joseph E. Kernan and Frank O'Bannone.

### MEMORANDUM AND ORDER

SHARP, District Judge.

Mario Sims filed this complaint in state court pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 1981, 42 U.S.C. § 1985(3), 42 U.S.C. § 1986, and 42 U.S.C. § 2000(d), 18 U.S.C. §§ 1961, 1962, and 1964 *et seq.*, and alleging the violation of rights protected by the First, Sixth, and Fourteenth Amendments to the United States Constitution. The defendants in his case have divided themselves into two sets. St. Joseph Superior Court Judge John Marnocha, Marshall Circuit Court Judge Michael D. Cook, former Indiana Attorney General Karen Freeman–Wilson, Lieutenant Governor Joseph E. Kernan, and Governor Frank O'Bannon, refer to themselves as the "State defendants." St. Joseph County, the St. Joseph County Board of Commissioners, and St. Joseph County Clerk Linda Scopelitis, call themselves the "local defendants."

The State defendants removed the case to federal court pursuant to 28 U.S.C. §§ 1441(b) and 1446. Both State and local defendants filed motions to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), and the plaintiff has responded to their motions.[1]

■ A complaint states no actionable claim when it appears beyond doubt that

---

1. The State defendants submitted numerous uncertified documents along with their dismissal motion, purporting to be documents from Mr. Sims's post-conviction relief proceedings and a state habeas corpus petition. Mr. Sims also submitted many uncertified documents along with his response. The court will not consider these uncertified documents. The defendants state in their memorandum that they submit these matters beyond the pleadings in part to establish "that Judge Cook entered a final judgment on the post-conviction case on July 18, 2000." The

complaint alleges that on July 25, 2000, Judge Cook failed to rule on a Trial Rule 60(B) motion filed by Mr. Sims (complaint ¶ 20). Because Mr. Sims would not have filed a Rule 60(B) motion unless judgment had already been entered, the court will assume, for the purposes of this memorandum, that Judge Cook entered judgement against Mr. Sims before July 25, 2000. Because the court is not considering matters outside the pleadings, it will treat the defendants' motions as motions to dismiss rather than motions for summary judgment.

the plaintiff can prove no set of facts consistent with his complaint that would entitle him to relief. *Hishon v. King & Spalding,* 467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). When reviewing *pro se* complaints, the court must employ standards less stringent than if the complaint had been drafted by counsel. *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). The court must accept the well-pleaded factual allegations as true, and "construe such allegations in favor of the plaintiff." *Sherwin Manor Nursing Ctr. v. McAuliffe,* 37 F.3d 1216, 1219 (7th Cir.1994); *cert. denied,* 516 U.S. 862, 116 S.Ct. 172, 133 L.Ed.2d 113 (1995). Although ambiguities in the complaint should be interpreted in the plaintiff's favor, *Canedy v. Boardman,* 16 F.3d 183, 188 (7th Cir.1994), the court need not strain to find inferences favorable to the plaintiff that are not apparent on the face of the complaint, *Coates v. Illinois State Bd. of Educ.,* 559 F.2d 445, 447 (7th Cir. 1977), or ignore factual allegations set forth in the complaint that undermine the plaintiff's claim. *City Nat'l Bank of Florida v. Checkers, Simon & Rosner,* 32 F.3d 277, 281 (7th Cir.1994).

Mr. Sims is committed to the Indiana Department of Correction, pursuant to convictions for breaking into the home of his estranged wife and sexually assaulting her at the point of a heroin-filled syringe and a pistol. He has attempted to challenge the validity of those convictions, and alleges that the defendants have obstructed his efforts to obtain judicial review of his convictions in the state courts. This court addressed similar claims in *Mario Sims v. Joseph Kernan,* No. 3:98–cv–539. *See Sims v. Kernan,* 29 F.Supp.2d 952 (N.D.Ind.1998); *Sims v. Kernan,* 72 F.Supp.2d 944 (N.D.Ind.1999).

According to the complaint, Mr. Sims, an African–American, was a political opponent of Lieutenant Governor Kernan when Kernan was mayor of South Bend (complaint ¶ 12). Mr. Sims alleges that defendant Kernan considered him a threat to his political plans and orchestrated a conspiracy to deny him access to the courts (complaint ¶¶ 13–16).

Mr. Sims has long contended that he is actually innocent of the charges against him. *Sims v. Kernan,* 29 F.Supp.2d at 956. As part of his continuing effort to overturn his conviction, Mr. Sims filed a petition for post-conviction relief, which ended up before Special Judge Michael D. Cook. He alleges that on July 25, 2000, Judge Cook "refused to rule on a Trial Rule 60(B) motion that showed that Cook had denied the Plaintiff equal access [to the courts] and equal protection under the United States Constitution," and refused to address the merits of his prosecutorial misconduct claims against defendant Marnocha (complaint ¶¶ 20–21). He alleges that St. Joseph County Clerk of Courts Linda Scopelitis "refused to withdraw submission or respond to the Plaintiff's praecipe to prepare the record," which prevented him from filing an appeal (complaint ¶¶ 22–23). Finally, he alleges that on October 24, 2000, John Marnocha, now a state trial judge, entered an order stating that he lacked jurisdiction to act on Mr. Sims's petition so that he could "deny the Plaintiff access to the Courts and a hearing on the merits in conspiracy with Special Judge Cook" (complaint ¶¶ 27–28).

 Mr. Sims brings this action pursuant to 42 U.S.C. § 1983 and other statutes. Section 1983 provides a cause of action to redress the violation of federally secured rights by a person acting under color of state law. *Bell v. City of Milwaukee,* 746 F.2d 1205 (7th Cir.1984). To state a claim under § 1983, a plaintiff must satisfy two elements; he must allege violation of rights secured by the Constitution and laws of the United States, and he must

show a person acting under color of law committed the alleged deprivation. *West v. Atkins,* 487 U.S. 42, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988); *Gomez v. Toledo,* 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980); *accord, Baker v. McCollan,* 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979).

■ Citing *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), the local defendants assert that a county is not "a 'person' amenable to suit under 42 U.S.C. § 1983." *Will,* however, held only that states and their agencies are not persons within the meaning of § 1983. Counties are "persons" exposed to litigation under the federal civil rights statutes, if the legal requisites are fulfilled. *Scott v. Clay County, Tennessee,* 205 F.3d 867 (6th Cir.), *cert. denied,* 531 U.S. 874, 121 S.Ct. 179, 148 L.Ed.2d 123 (2000).

## I. JUDICIAL IMMUNITY

■ Mr. Sims sues Judge Marnocha for entering an order that he lacked jurisdiction over Mr. Sims's post-conviction petition, and alleges that Judge Cook did not rule on certain motions in the post-conviction case over which he had acquired jurisdiction. Because the plaintiff seeks to sue them for judicial acts, these defendants are absolutely immune from damage liability. The doctrine of judicial immunity affords state judges absolute immunity for past judicial acts regarding matters within their court's jurisdiction, even if their "exercise of authority is flawed by the commission of grave procedural errors." *Stump v. Sparkman,* 435 U.S. 349, 364, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978).

■ Mr. Sims argues that Judge Marnocha "has admitted he had no jurisdiction," but Judge Marnocha clearly had jurisdiction to decide whether he had jurisdiction. Mr. Sims does not allege that Judge Marnocha took any further action

after deciding that he lacked jurisdiction over his petition for post-conviction relief.

## II. CIVIL R.I.C.O. CLAIM

Count IV of Mr. Sims's complaint, entitled "Violations of the R.I.C.O. Act," asserts a claim against several defendants under the Racketeer Influenced and Corrupt Organizations ("R.I.C.O.") Act. Mr. Sims alleges that "Defendants Kernan, Scopelitis, Marnocha, Cook, St. Joseph County, and the Board of Commissioners, and the County of St. Joseph ... injur[ed] the Plaintiff in his business and his property by removing him from being able to operate his Executive Search Firm, his rental business, and his partnership in the Nigerian trading company, UBN, ... through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961, 1962, and 1964, et seq."

Sections 1961 and 1962 are criminal statutes, and an individual plaintiff cannot proceed directly under them. Section 1964 is entitled "civil remedies," and allows "any person injured in his business or property by reason of a violation of section 1962 of this chapter" to bring a claim for civil damages. Mr. Sims's civil R.I.C.O. claim arises under § 1964.

■ The reason Mr. Sims is no longer able to operate his Executive Search Firm, his rental business, and his Nigerian trading operation is that he is incarcerated pursuant to criminal convictions. Under the doctrine of *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), Mr. Sims cannot bring a damage claim arising from a criminal conviction until the conviction had been overturned. In *Heck,* the court held that if the remedy sought in a civil action would require a finding or judgment that would render a conviction or sentence invalid, then the plaintiff must first "prove that the conviction was reversed on direct appeal,

expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at 486–87, 114 S.Ct. 2364.

Mr. Sims says that some defendants wrongfully accused him of criminal activity and conspired to have him convicted. He was convicted on these criminal charges, and those convictions have not been overturned. To conclude that the defendants acted against Mr. Sims in a manner that would create civil R.I.C.O. liability would require a finding or judgment that he is innocent. Accordingly, the court must dismiss these claims. If Mr. Sims is able to have his convictions set aside, he may file another complaint seeking damages on this claim.

### III. CLAIMS PURSUANT to 42 U.S.C. § 1985

■ In count I of his complaint, entitled "conspiracy," Mr. Sims asserts a claim under Section 1985(3), which deals with racially motivated conspiracies to interfere with civil rights. In ¶ 32, Mr. Sims asserts that "Defendants Kernan, Scopelitis, Marnocha, Cook, St. Joseph County Board of Commissioners, and the County of St. Joseph, conspired to deny [him] access to the Courts, Equal Protection, and equal access."

■ To state a § 1985(3) claim, the plaintiff must "allege that he was the victim of a conspiracy against him based on some 'class based animus.'" *Malsh v. Austin,* 901 F.Supp. 757, 763–64 (S.D.N.Y. 1995). "A cause of action under § 1985(3) requires a plaintiff to allege (1) a conspiracy; (2) for the purpose of depriving a person or class of persons of the equal protection of the laws or equal privileges and immunities under the law; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property or a deprivation of a right or

privilege of a citizen of the United States." *Traggis v. St. Barbara's Greek Orthodox Church,* 851 F.2d 584, 586–87 (2d Cir. 1988).

■ In § 1985 cases, vague and conclusory allegations of a conspiracy state no claim upon which relief can be granted. *Amundsen v. Chicago Park District,* 218 F.3d 712, 718 (7th Cir.2000); *Sampson v. Yellow Cab Company,* 55 F.Supp.2d 867, 869 (N.D.Ill.1999); *Copeland v. Northwestern Memorial Hospital,* 964 F.Supp. 1225, 1235 (N.D.Ill.1997). Where a complaint asserts that the defendants conspired to deny the plaintiff his constitutional rights, that claim must be "supported by some factual allegations suggesting a 'meeting of the minds.'" *Amundsen v. Chicago Park District,* 218 F.3d 712 at 718, *quoting Kunik v. Racine County, Wisconsin,* 946 F.2d 1574, 1580 (7th Cir.1991). Thus, a § 1985 plaintiff:

> must satisfy the following: (1) allege the existence of an agreement; (2) if the agreement is not overt, "the alleged acts must be sufficient to raise the inference of mutual understanding" (*i.e.,* the acts performed by the members of a conspiracy "are unlikely to have been undertaken without an agreement"); and (3) "a whiff of the alleged conspirators' assent ... must be apparent in the complaint."

*Amundsen v. Chicago Park District,* 218 F.3d at 718, *quoting Kunik v. Racine County, Wisconsin,* 946 F.2d at 1580.

Mr. Sims's allegations are conclusory, and the defendants' acts in furtherance of the alleged conspiracy are for the most part disjointed and do not provide the required "whiff" of the alleged conspirators' assent to enter into a conspiracy against Mr. Sims. Even giving Mr. Sims the benefit of the inferences to which he is entitled at the pleadings stage, this claim does not meet the pleading requirements of a § 1985 case.

## IV. CLAIMS UNDER 42 U.S.C. § 1986

In Count III of his complaint, entitled "Failure to Prevent or Protect," Mr. Sims asserts that "Governor O'Bannon and Indiana Attorney General Freeman–Wilson [were] personally aware of the Constitutional violations [but] failed to prevent them or protect the plaintiff once they became aware" of the problems. This claim is based on ¶¶ 18 and 19 of the complaint in which Mr. Sims alleges that these defendants were "put on notice of the conspiracy and failed to take action or stop the Constitutional deprivation." Both paragraphs cite the court to an exhibit attached to the complaint.

Defendant Wilson–Freeman asserts that she is entitled to dismissal because she is entitled to absolute immunity as an Attorney presenting evidence in administrative hearings. *Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), as a government lawyer defending appeals in criminal cases, *Henzel v. Gerstein,* 608 F.2d 654 (5th Cir.1979), and as an Attorney representing custodians in habeas cases. *Summers v. Sjogren,* 667 F.Supp. 1432 (D.Utah 1987). But, as he notes in his response, Mr. Sims is suing this defendant based on her alleged refusal to act to prevent him from being victimized by a race based conspiracy, rather than because of her actions defending his criminal convictions or representing civil defendants in suits filed by Mr. Sims.

A cause of action under section 1986 "is premised on a violation of section 1985." *Rhodes v. Mabus,* 676 F.Supp. 755, 760 (S.D.Miss.1987), and "liability under § 1986 is merely derivative of liability under § 1985." *Patrick v. Staples,* 780 F.Supp. 1528, 1537 (N.D.Ind.1991). Because the court is dismissing Mr. Sims's § 1985 claim, it must also dismiss his § 1986 claim. But even if Mr. Sims had stated a § 1985 claim, the court would still dismiss the § 1986 claim against defendants O'Bannon and Freeman–Wilson because they were not in a position to intervene to stop the alleged conspiracy.

The exhibit cited by the plaintiff is a letter he wrote to Governor O'Bannon dated April 7, 2000, with a copy to Attorney General Freeman–Wilson. Section 1986 provides that "every person having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses to do so, if such wrongful act be committed, shall be liable to the party injured ... for all damages caused by such wrongful act ..." Section 1986 allows a suit to be brought against persons who are not members of a § 1985 conspiracy but who are aware that persons they supervise may have entered into a conspiracy. *See Hampton v. City of Chicago,* 484 F.2d 602, 610 (7th Cir.1973), *cert. denied,* 415 U.S. 917, 94 S.Ct. 1413, 39 L.Ed.2d 471 (1974) (attempted suit against Mayor and Police Superintendent on theory that they knew of a conspiracy by their subordinates against the plaintiffs).

Mr. Sims's letter complained of actions by prosecutors, past and present, and state judges, particularly Judges Michael Cook, John Marnocha, and Robert Gilmore. To be liable under § 1986, a defendant must have knowledge of a § 1985 conspiracy and have the "power to prevent or aid in preventing the commission of the same." Neither the governor nor the Indiana Attorney General oversee or supervise prosecutors or judges, so they cannot be held liable under § 1986 for failing to act on Mr. Sims's complaint.

## V. RETALIATION CLAIMS

In Count II of his complaint, entitled "retaliation," Mr. Sims asserts that "Defendants Kernan, Scopelitis, Marnocha,

Cook, St. Joseph County Board of Commissioners, and the County of St. Joseph, retaliated against [him] for his exercising his First, Sixth and Fourteenth Amendment rights." In paragraph seven of the complaint, Mr. Sims asserts that "the Defendants retaliated against [him] because he is proceeding propria persona, is an African–American, and has exercised his rights to grieve, and appear and be heard."

■ Retaliation for the exercise of constitutionally protected rights is actionable under § 1983, but merely alleging the ultimate fact of retaliation is insufficient to state a claim upon which relief can be granted. *Benson v. Cady,* 761 F.2d 335, 342 (7th Cir.1985). Mr. Sims asserts that the defendants retaliated against him because he is an African–American who is exercising his right to contest the validity of his conviction. But almost all criminal defendants, of all races, contest the validity of their convictions, and many proceed *pro se* at some point in their odysseys through the state and federal court systems. Mr. Sims's allegations are conclusory, and do not state a sufficient chronology of events from which retaliatory animus on the part of the defendants can be inferred.

## VI. CONCLUSION

For the foregoing reasons, the court **GRANTS** the defendants' dismissal motions (docket ## 20 and 24). The dismissal of the civil R.I.C.O. claims are without prejudice to the plaintiff's right to refile these claims if he is able to have his conviction overturned.

**IT IS SO ORDERED.**