Nowaczyk v. N.H. Supreme Court        CV-97-635-JD   02/24/99
                UNITED STATES DISTRICT COURT FOR THE
                      DISTRICT OF NEW HAMPSHIRE


Steven J. Nowaczyk

      v.                                Civil No. 97-635-JD

The New Hampshire
Supreme Court, et al.


                         O R D E R


      Plaintiff, appearing pro se, filed a civil rights complaint

against, among others, the New Hampshire Supreme Court, the New

Hampshire Committee on Judicial Conduct ("CJC"), Judge Patricia

Coffey, John Coffey, Coffey Legal Services, Judge Walter Murphy,

the towns of North Hampton and Seabrook, several town officials,

Rockingham County, and several county officials.  The magistrate

judge reviewed plaintiff's pro se complaint pursuant to 28

U.S.C.A. § 1915A and recommends dismissal of the complaint.

Plaintiff objects to the report and recommendation contending

that his complaint should not have been subjected to the § 1915A

screening process and that the magistrate misconstrued the

factual bases for his claims and misapplied several of the legal

grounds in recommending dismissal of the complaint.  After a de

novo review, the court adopts the magistrate's report and

recommendation in part, as modified herein, but declines to

accept the recommendation to dismiss the entire complaint.

<u>Background</u>[1]

Plaintiff was charged with crimes arising from events pertaining to fires at three restaurants. As he clarifies in his objection to the magistrate's report and recommendation, plaintiff's claims in this suit arise from his arrest for stalking and his arrest for arson of the Copper Penny Restaurant, neither of which resulted in convictions. He alleges that in 1990 and 1991 he co-owned the Copper Penny Restaurant in North Hampton, New Hampshire, and that Amy Keegan was an employee of the restaurant. He consulted with John Coffey, a lawyer of the firm Coffey Legal Services, at least once in December of 1991 about the Copper Penny Restaurant and the Nifty 50ies Café corporation. After the Copper Penny Restaurant burned in December 1991, plaintiff sold his interest to the Nifty 50ies Café corporation, and he and Keegan became employees of the Nifty 50ies Café corporation. At some point, Keegan and plaintiff became involved in an "extramarital affair."

In October of 1992, plaintiff plead guilty to federal charges of filing a false loan application and bank fraud and was

---

[1]The facts are summarized from plaintiff's complaint and in large part duplicate the background facts provided in the magistrate's report and recommendation. The quoted portions are also from the complaint.

2

given an eight-month jail sentence and three years of supervised release.  Upon his release from jail in April of 1993, plaintiff was supervised by defendant, Clayton Foster.  Plaintiff alleges that Foster was "obsessed" with plaintiff's inability to pay the court ordered restitution.  In August of 1993, a safe was stolen from the Nifty 50ies Café.  The incident was investigated by the Hampton Police Department.  Plaintiff filed a complaint with the New Hampshire Attorney General's office that the manner in which the police conducted their investigation damaged his reputation.  The matter was referred to the Hampton board of selectmen.  Plaintiff also told Foster about the theft, the police investigation, and his complaint to the Attorney General's office.

In December of 1993, the Nifty 50ies Café also burned.  Keegan and Foster met with investigators, and Keegan told them that plaintiff had nothing to do with the fire.  Keegan and plaintiff ended their affair on hostile terms because plaintiff was attempting a reconciliation with his wife.  In January of 1994, Foster met with plaintiff and his wife and "was advised as to all relevant matters concerning plaintiff."  Thereafter, Foster and Keegan met with Seabrook and Hampton police officers, agents of the Federal Bureau of Alcohol, Tobacco, and Firearms, and two private citizens, Raymond and Margaret Desilets.  At the

3

meeting, Keegan "volunteered erroneous information" and "misrepresentations" about plaintiff and "provided a script" for the Desilets to read as part of an "evil plan" to cause plaintiff's false arrest and imprisonment, and malicious prosecution. Keegan and the Desilets allegedly had more meetings with police to further the "evil plan to falsely prosecute and imprison the plaintiff."

On February 1, 1994, North Hampton police officer Richard Sawyer obtained a warrant to arrest plaintiff for the offense of stalking Keegan. Plaintiff alleges that Sawyer misrepresented facts in the warrant affidavit and failed to allege an offense under New Hampshire law. Plaintiff was arrested pursuant to the allegedly defective warrant on February 2. He was arraigned before Judge Frasier, who is also a defendant in plaintiff's suit, and Judge Frasier imposed $500.00 in bail for a seventy-two hour detainer. While plaintiff was held at the Rockingham County Jail, Northampton police officers "contrived an evil plan" to send Raymond Desilets to visit plaintiff while wearing a hidden body wire to record incriminating statements.

In the next few days, plaintiff was arrested and arraigned on charges of arson of the Copper Penny Restaurant, solicitation of arson of Wilber's Diner, and conspiracy to commit arson of the Nifty 50ies Café. Bail was imposed for a seventy-two hour

4

detainer.  Plaintiff alleges that Judge Frasier contacted Clayton Foster, plaintiff's parole officer, requesting him to get a federal warrant as soon as possible.

Foster then allegedly contacted a federal probation officer in Florida as part of his effort to get a federal arrest warrant for plaintiff.  Plaintiff alleges that Foster misrepresented facts in his effort to get the warrant saying that plaintiff had carried a gun, and had stalked Keegan telling her that he would kill her if she reported plaintiff's illegal activities. Foster's statements were based on what Keegan told the Seabrook and North Hampton police in January of 1994.  Despite the lack of a federal arrest warrant, on February 8, 1994, Judge Frasier entered a no bail order that plaintiff appealed to the superior court.

Judge Patricia Coffey, a defendant, held a hearing on plaintiff's appeal from Judge Frasier's no bail order.  Plaintiff was not then informed that Judge Coffey was the wife of attorney John Coffey or that she held an interest in Coffey Legal Services.  Judge Coffey imposed bail in the amount of $25,000 resulting in plaintiff's continued pretrial confinement.

In March and April of 1994, plaintiff was indicted on charges of arson of the Copper Penny Restaurant, conspiracy to commit arson of the Nifty 50ies Café, criminal solicitation to

5

commit arson of Wilber's Diner, being a felon in possession of a firearm, and "assorted counts" of criminal restraint, kidnaping, and false imprisonment. During April, Judge Coffey ruled on a variety of motions pertaining to plaintiff's criminal charges. Although represented by counsel, plaintiff also filed a pro se motion for a writ of habeas corpus "which articulated a myriad of constitutional questions and grounds concerning an appearance of bias and prejudice" about Judge Coffey. Plaintiff contended that Judge Coffey appeared to be asleep during his April bail hearing and appeared to be predisposed against him. Judge Coffey denied his pro se petition for habeas relief without a hearing or further expansion of the record. Again acting pro se, plaintiff filed a motion to disqualify Judge Coffey, which she also denied. He then submitted a complaint to the New Hampshire Judicial Conduct Committee. The CJC dismissed the complaint as meritless in September of 1994.

The charges against plaintiff were divided into three groups for trial. The Nifty 50ies Café fire charges were tried first before Judge Coffey. Plaintiff was convicted, and then appealed to the New Hampshire Supreme Court raising the issue of Judge Coffey's alleged bias. His conviction was summarily affirmed. Justice William Johnson, who was vice-chair of the CJC when plaintiff's complaint against Judge Coffey was considered,

6

participated in plaintiff's appeal to the New Hampshire Supreme Court. Plaintiff requested reconsideration on grounds of Justice Johnson's alleged lack of impartiality, but, he alleges, "the court simply denied the additional pleadings."

Before plaintiff's trial on the Copper Penny Restaurant charges, plaintiff's counsel moved to disqualify Judge Coffey raising for the first time allegations that plaintiff consulted with her husband, John Coffey, of Coffey Legal Services. Judge Coffey telephoned the firm to ask about representation of plaintiff, and then granted the motion to disqualify herself. The case was reassigned to Judge Walter Murphy. After a day of trial, information about the Nifty 50ies Café arson charges was impermissibly introduced, and a mistrial was declared. On July 3, 1997, the indictments concerning the Copper Penny Restaurant arson were dismissed.

Plaintiff filed a series of pro se motions to vacate Judge Coffey's rulings in the criminal proceedings against him. In November of 1997, Judge Coffey vacated her denial of plaintiff's request to suspend his sentence on his conviction on the Nifty 50ies Café charges and referred the matter to another judge. She disqualified herself from any further litigation involving plaintiff. Judge Murphy reviewed Judge Coffey's rulings and denied all of plaintiff's motions. Plaintiff then moved to

7

disqualify Judge Murphy because he was presiding in civil litigation involving the Nifty 50ies Café and plaintiff's wife. Plaintiff alleges that "a reasonable person could subjectively conclude that Judge Walter L. Murphy harbored a bias which would compel him to taint his rulings." Plaintiff continued his efforts to report Judge Coffey's alleged bias and complains that the secrecy requirements of the Judicial Conduct Committee have prevented him from presenting a complete case as to bias.

Based upon those facts, plaintiff alleges twenty-two counts against the defendants and seeks to bring a class action on behalf of persons interested in obtaining information from the CJC. Count I addresses plaintiff's claims pertaining to Judge Coffey's alleged bias, and Counts II and V challenge the CJC's handling of his complaint against her and the application of various New Hampshire statutes and rules. Counts II and III complain about Justice Johnson's participation on the CJC and in consideration of plaintiff's appeal. Count VI alleges indifference by the New Hampshire Supreme Court, the CJC, Judges Coffey and Murphy, and "other judicial members" to plaintiff's rights to an impartial tribunal and equal protection and due process rights. Count XXII similarly alleges general dissatisfaction with the operation of the CJC. Count VII focuses more specifically on Judges Coffey and Murphy alleging due

8

process violations in their handling of plaintiff's cases. Counts VIII and XI allege that John Coffey and Coffey Legal Services violated the attorney-client privilege and committed malpractice. Counts IX and X allege that Judge Coffey and Jane Doe disclosed confidential attorney-client information and thereby violated plaintiff's constitutional rights and seeks money damages.

Count XII alleges that Judge Frasier illegally and unconstitutionally detained and imprisoned plaintiff and seeks damages. Count XIII alleges that Timothy Simpson, a bail commissioner and justice of peace, issued the warrant for plaintiff's arrest on stalking charges and for arson of the Copper Penny Restaurant without probable cause in violation of his Fourth, Fifth, Sixth, Eighth and Fourteenth Amendment rights, and seeks damages. In Count XIV, plaintiff alleges that a group of police officers, Foster, Keegan, the Desilets, and two ATF agents "acted in unification" to deprive him of constitutional rights and also committed state law torts of false arrest, false imprisonment, malicious prosecution, abuse of process, invasion of privacy, and defamation. Counts XV, XVI, XVII, and XVIII allege the liability of North Hampton, Hampton, Seabrook, and Rockingham County for negligent hiring, training, and supervision of defendant police officers and other "public servants" leading

9

to the violation of plaintiff's constitutional rights. Count XIX alleges that Steven Keable was negligent in his investigation and prosecution of the allegations against plaintiff resulting in his malicious prosecution. Count XX charges the clerk of the Hampton District Court, John Clark, with contributing to the violations of plaintiff's constitutional rights by others when he communicated with Foster about plaintiff's second detainer. Count XXI alleges claims against Foster pertaining to his input into plaintiff's arrests and his efforts to obtain a federal warrant.

## Discussion

Plaintiff objects to the application of the screening process pursuant to 28 U.S.C.A. § 1915A to his case. He also objects to certain factual statements and the magistrate's conclusions in the report and recommendation. The challenged portions of a recommendation by the magistrate judge to dismiss a case are reviewed de novo. 28 U.S.C.A. § 636(b)(1); Fed. R. Civ. P. 72(b).

The Prison Litigation Reform Act, effective in April of 1996, added the screening procedure codified as 28 U.S.C.A. § 1915A that is aimed at discouraging prisoners from filing claims that are not likely to succeed. See Crawford-El v. Britton, 118

10

S. Ct. 1584, 1596 (1998). Section 1915A(a) requires the district court to review, as soon as possible, "a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." Plaintiff argues that § 1915A is limited to suits seeking redress concerning prison conditions brought against the incarcerating institution, and, therefore, that the magistrate was not authorized to review his complaint.

The plain language of § 1915A does not support plaintiff's interpretation since the statute on its face is not limited to cases challenging prison conditions as he suggests. In contrast to § 1915A, 42 U.S.C.A. § 1997e(c), also part of the Litigation Reform Act, directs the court to dismiss on its own motion or the motion of another party "any action brought with respect to <u>prison</u> <u>conditions</u> under section 1983" that is "frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief." (Emphasis added.) Other courts have employed § 1915A to review complaints that, similar to the one filed by plaintiff, do not challenge prison conditions and are not brought against the prison. <u>See, e.g.</u>, <u>Sims v. Kernan</u>, No.3:98-CV-0539-AS, 1998 WL 856329 at *1 (N.D. Ind. Dec. 4, 1998). The cases plaintiff cites in support of his interpretation are inapposite.

11

Accordingly, review pursuant to § 1915A is required in this case.

"On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint – (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." § 1915A(b). In determining whether the complaint states a cognizable claim, the court uses the same standard as is applicable to a motion pursuant to Federal Rule of Civil Procedure 12(b)(6). See, e.g., Atkinson v. Bohn, 91 F.3d 1127, 1128 (8th Cir. 1996); Sims, 1998 WL 856329 at *1; Sumner v. Tucker, 9 F. Supp. 2d 641, 642 (E.D. Va. 1998).

In considering whether a complaint states a claim, plaintiff's well pleaded factual allegations are accepted as true with all reasonable inferences drawn in his favor. Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996). In addition, a pro se complaint is generally held to a less stringent standard than pleadings drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520 (1972). A complaint will not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

12

A.  Claims Arising from the CJC's Actions

Many of plaintiff's claims challenge actions taken by the CJC and its members.  Plaintiff seeks a declaratory judgment to declare unconstitutional certain New Hampshire Supreme Court Rules pertaining to the confidentiality of CJC complaints and to declare that actions by the CJC violated his federal and state constitutional rights.  He also asks that this court enjoin the New Hampshire state courts from instituting proceedings against him based on the rules applicable to CJC complaints.

The procedures of the New Hampshire Committee on Judicial Conduct do not violate plaintiff's federal constitutional rights, and state constitutional rights are not actionable under 42 U.S.C.A. § 1983.[2]  Plaintiff, as a complainant, does not have a constitutional right to have the CJC handle his complaint in a way that would help him develop evidence about his complaint or to pursue review of the CJC's decision, as he claims.  Plaintiff has not identified a liberty or property interest that was affected by the CJC's decisions pertaining to his complaints, and no such interests are apparent from his pleadings.  See, e.g., Fournier v. Reardon, 160 F.3d 754, 757 (1st Cir. 1998) (discussing elements of procedural and substantive due process

---

[2]The administrative rules of the CJC are part of the Rules of the New Hampshire Supreme Court, Rules 39 and 40 (West 1998).

13

claims), <u>petition for cert. filed</u>, No. 98-1264 (Feb. 5, 1999); <u>Frances-Colon v. Ramirez</u>, 107 F.3d 62, 63 (1st Cir. 1997) (essential elements of due process); <u>Santiago de Castro v. Morales Medina</u>, 943 F.2d 129, 130-31 (1st Cir. 1991) (same). As plaintiff has failed to allege an essential element of his due process claim against the CJC and its members, he fails to state such a claim.

The Equal Protection Clause of the Fourteenth Amendment guarantees that the state will not "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The rules, processes, and procedures of the CJC exist "to provide for the orderly and efficient administration of the Code of Judicial Conduct," N.H. Sup. Ct. Rule 39(1). The CJC "shall consider all complaints" that are submitted in compliance with its requirements but "shall not consider complaints against a judge or master or referee relating to his rulings." N.H. Sup. Ct. Rule 39(9). Complaints relating to a judge's rulings must be addressed through the court appellate process. <u>Id.</u> The CJC has no authority to relieve a complainant from the effects of a judge's actions or to award compensation for injuries caused by such actions.

The CJC considered plaintiff's complaint against Judge Coffey, but apparently, based on plaintiff's allegations, found

14

that it had no merit and dismissed it.  <u>See</u> Sup. Ct. Rule 40(4).
Plaintiff alleges that the CJC deprived him of equal protection
by failing to make a "complete record" of his complaint against
Judge Coffey and by denying him an opportunity to develop
evidence to support his allegations.  He says that the CJC's
"imperviousness to the statutes and the rules" deprived him of
equal protection.  Plaintiff, however, does not allege that his
complaint was treated any differently than any other <u>similar</u>
complaint and the circumstances he describes appear to conform to
the CJC's rules.[3]  Since plaintiff has not identified a basis for
a due process right that would require any greater process than
that afforded by the CJC, an alleged lack of process cannot be
the basis for an equal protection claim.

Plaintiff alleges that the CJC's confidentiality require-
ments violate his First Amendment rights by forbidding him to
disclose his filing of a complaint with the CJC and also by
preventing him from obtaining information that he could use as

---

[3]If plaintiff intended to bring an equal protection claim
based on his pro se status, he has not alleged facts that would
tend to show that the CJC treated him in a particular way because
he was unrepresented, rather than because of the content of his
complaint.  Since the Equal Protection Clause "embodies a general
rule that States must treat like cases alike but may treat unlike
cases accordingly," <u>Vacco v. Quill</u>, 117 S. Ct. 2293, 2297 (1997),
the CJC had no obligation to treat a facially meritless
complaint, from a pro se or represented complainant, as it would
complaints that are <u>not</u> facially meritless.

evidence in other proceedings.  The CJC rule pertaining to the confidentiality of complaints requires complainants to

> keep confidential the fact that a complaint has been filed with the committee until either the complaint is dismissed, a statement of formal charges is prepared and filed as described in section 7(a) of this rule, or the complainant is notified that the committee has disposed of the complaint by taking appropriate remedial action as described in subsection (h) of this section.

N.H. Sup. Ct. Rule 40(3)(b).  The rule does not prevent a complainant from public disclosure of a judge's conduct that he believes is inappropriate or violates the code of conduct.  N.H. Sup. Ct. Rule 40(3) comment.  Plaintiff's suggestion that he may file another complaint is too speculative to require analysis of whether his right to free speech would be violated by the confidentiality rule.

The rules also provide for the confidentiality of CJC proceedings except in particular circumstances.  N.H. Sup. Ct. Rule 40(3).  On the facts he alleges, plaintiff has not demonstrated any need for information from the CJC that would implicate the First Amendment nor has he suggested that the confidentiality rules impose a violation of his First Amendment rights in any other way.  Furthermore, the purpose of the CJC is not to permit individuals to obtain evidence for use in other proceedings, but rather to provide an orderly method of registering complaints concerning alleged judicial misconduct.

16

Accordingly, plaintiff has not alleged facts to support a claim that the CJC's confidentiality requirements have violated or may in the future violate his First Amendment rights.  See, e.g., Kamasinski v. Judicial Review Council, 44 F.3d 106, 110-11 (2d Cir. 1994).

As the CJC's rules, processes, and procedures are not unconstitutional in the context of plaintiff's allegations, he has failed to state claims against the CJC.


B.  Related Claims for Declaratory and Injunctive Relief

Plaintiff asks this court to enjoin the New Hampshire Supreme Court from instituting contempt proceedings against him in the future and to prevent his transfer from the New Hampshire State Prison.  Plaintiff also asks that a variety of New Hampshire statutes and court rules be declared unconstitutional. To the extent plaintiff is seeking injunctive and declaratory relief based on anticipated future actions, the court lacks jurisdiction to provide such relief.

A basic tenet of federal jurisdiction is that the plaintiff must have standing to assert the claims he brings, which requires allegations of an "injury in fact," causation, and redressability.  Steel v. Citizens for a Better Environment, 118 S. Ct. 1003, 1016 (1998); see also Berner v. Delahanty, 129 F.3d

17

20, 23 (1st Cir. 1997), cert. denied, 118 S. Ct. 1305 (1998). Plaintiff has not any alleged facts to show that he is likely to be injured by any of the challenged laws or rules in the future. Although he says that he either is or will in the future file another complaint with the CJC, as discussed above, the CJC's actions do not cause injury to him as a complainant. Since the injury must be "actual or imminent, not conjectural or hypothetical," a mere general possibility that plaintiff might find himself embroiled in future criminal prosecution involving the same issues is insufficient.[4] See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (internal quotations omitted); see also Berner, 129 F.3d at 24. In addition, even if plaintiff could meet the requirements of alleging an injury in fact, the abstention doctrines of Younger v. Harris, 401 U.S. 37 (1971) and its progeny, would preclude the relief sought from this court.

To the extent plaintiff seeks declaratory relief from past decisions by the New Hampshire Supreme Court, as discussed by the magistrate, his claims are barred by the Rooker-Feldman doctrine. Federal district courts lack jurisdiction to review decisions of

---

[4]Plaintiff's allegation that his trial on other charges was scheduled for September of 1998 does not create a sufficient likelihood of injury since he does not explain how the challenged CJC rules or the bail statute are implicated in that proceeding. In addition, he has alleged no circumstances making it likely that he will need to invoke the disqualification rules or laws in the future.

18

state courts and to consider claims that are "inextricably intertwined" with state court decisions. See Wang v. New Hampshire Bd. of Registration in Med., 55 F.3d 698, 703 (1st Cir. 1995). Accordingly, this court lacks subject matter jurisdiction to consider plaintiff's claims to the extent he seeks injunctive or declaratory relief pertaining to particular decisions of New Hampshire state courts.

Plaintiff's claims based on actions by the CJC and its members and by the New Hampshire Supreme Court are dismissed.

C.    Judicial Immunity

Absolute judicial immunity protects a judge from claims for money damages based on actions performed in a judicial capacity and within the judge's jurisdiction. Mireles v. Waco, 502 U.S. 9, 9-10 (1991), citing Forrester v. White, 484 U.S. 219, 229-230 (1988). Plaintiff's claims against Judges Coffey, Murphy, and Frasier are based entirely on allegations of their actions performed in their judicial capacities and within their jurisdiction. Plaintiff's merely conclusory statements to the contrary are insufficient to avoid dismissal of meritless claims. Therefore, to the extent plaintiff seeks money damages, his claims against the judges are barred by judicial immunity. Plaintiff's claims against the individual justices of the New

19

Hampshire Supreme Court, including Justice Johnson, based upon their dispositions of his appeals, are also barred by judicial immunity.

Further, plaintiff's claims against the judges and Justice Johnson allege that they were not impartial, or acted with an appearance of bias. In support of his claims, plaintiff asks that the defendant judges' lack of impartiality be inferred from decisions made against him and from other circumstances that do not impugn their impartiality. For the most part, plaintiff relies on his own conclusory statements about the defendant judges' appearance of bias and presents little in the way of concrete facts to sustain his allegations. The invocation of the "appearance" of partiality is easy and on its face would permit an individual to make an issue out of almost any conduct. However, the mere recitation of this mantra is insufficient to raise an issue. The plaintiff has failed to allege facts that demonstrate any actual bias against him nor facts that would support an inference of bias strong enough to overcome the presumption of judicial impartiality. See, e.g., Marshall v. Jerrico Inc., 446 U.S. 238, 242-43 (1980); Withrow v. Larkin, 421 U.S. 35, 46-47 (1975); Brooks v. New Hampshire Supreme Court, 80 F.3d 633, 640 (1st Cir. 1996).

While judges are not absolutely immune from claims for

20

prospective declaratory relief, see Pulliam v. Allen, 466 U.S. 522, 536-43 (1984), plaintiff seeks declarations that Judges Coffey, Murphy, and Frasier and Justice Johnson violated laws and his rights in their past actions, rulings, and decisions. Therefore, plaintiff's requests for declaratory relief ask the court to review decisions and rulings by the defendant judges. As noted above, a federal district court is not authorized to review decisions by state courts, even decisions allegedly involving constitutional error. See Brown v. Ives, 129 F.3d 209, 212 (1st Cir. 1997), cert. denied, 118 S. Ct. 1307 (1998).

To the extent plaintiff seeks prospective injunctive relief, he has not alleged that the defendant judges are subject to a declaratory judgment, or that declaratory relief was unavailable, as a prerequisite to injunctive relief. See 42 U.S.C.A. § 1983. Plaintiff's arguments in his objection that his unsuccessful efforts to obtain state habeas relief demonstrate the unavailability of a declaratory judgment for purposes of § 1983 do not meet the requirement. The habeas proceedings pertained to his conviction, not the actions that are at issue in this case, and he has not alleged that he sought a determination of the unconstitutionality of any of the challenged laws or rules. Plaintiff's complaint lacks any basis for awarding the declaratory or injunctive relief he seeks against the judges.

21

Accordingly, all of plaintiff's § 1983 claims against the defendant judges and the New Hampshire Supreme Court and its justices are dismissed.

D. Class Action

Plaintiff proposes a class of persons interested in obtaining and disclosing information about charges filed with the CJC and about the process and disposition of complaints to the CJC. As the magistrate judge explained in his report and recommendation, a pro se litigant, like plaintiff, may not represent anyone else in a law suit and is unlikely to be allowed to represent a class. See, e.g., McGrew v. Texas Bd. of Pardons & Paroles, 47 F.3d 158, 162 (5th Cir. 1995); Oxendine v. Williams, 509 F.2d 1405, 1407 (4th Cir. 1975); Maldonado v. Terhune, 28 F. Supp. 2d 284, 288 (D.N.J. 1998). In addition, since all of plaintiff's claims pertaining to the CJC and to judicial misconduct are dismissed, his proposed class action is moot. See McGrew, 47 F.3d at 162.

E. Claims Based on Allegations of False Arrest and Malicious Prosecution

Plaintiff alleges a group of claims arising from the circumstances of his arrest and prosecution on arson charges stemming from fires at the Copper Penny Restaurant, Wilber's Diner, and the Nifty 50ies Café and his arrest on charges of stalking Amy Keegan. The magistrate judge recommended that these claims be dismissed because plaintiff's convictions on the Nifty 50ies Café remain in place and plaintiff's claims constitute an impermissible collateral attack on his convictions. See Heck v. Humphrey, 512 U.S. 477, 486-87 (1994) ("[A] section 1983 plaintiff must prove that a conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.").

In his objection, plaintiff, by way of clarification, states that his claims are limited to those arising from his arrest on charges of stalking and his arrest and prosecution on charges from the Copper Penny Restaurant fire. Plaintiff alleges that he was never convicted on those charges making the requirement of Heck v. Humphrey inapplicable to his claims. Accordingly, for purposes of this initial review only, plaintiff's claims arising

from the charges of stalking Amy Keegan and arson in the Copper Penny Restaurant fire are not subject to dismissal under Heck v. Humphrey.

Other infirmities in plaintiff's remaining claims require further review, however. Plaintiff alleges that defendants who were involved in his arrest and detention violated his First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendment rights. Although he says in Count XIV that the defendants "acted in unification" to deprive him of his First Amendment right to petition the government, he alleges no facts that in any way suggest deprivation of his First Amendment rights, and those claims are dismissed. Cf. Britton v. Maloney, 981 F. Supp. 25, 40 n.29 (D. Mass. 1997) (discussing First Amendment claims in similar circumstances). In addition, as plaintiff has not alleged any facts that suggest violation of his Eighth Amendment right to be free of cruel and unusual punishment, see, e.g., Farmer v. Brennan, 511 U.S. 825, 832 (1994), all claims based on the Eighth Amendment are also dismissed.

Plaintiff bases his Sixth Amendment claims on allegations that he was deprived of his right to be tried by a neutral and impartial court. To the extent plaintiff alleges Sixth Amendment claims against individual judges, those claims are barred by judicial immunity. With respect to other defendants, plaintiff

24

fails to allege any facts pertaining to them that would have deprived plaintiff of his Sixth Amendment right to be tried by an impartial court. In addition, he has not alleged sufficient facts to overcome the presumption of judicial impartiality nor has he alleged facts to show that the outcome of the challenged proceedings was prejudiced by any lack of impartiality. See Neron v. Tierney, 841 F.2d 1197, 1206 (1st Cir. 1988) (discussing requirements for Sixth Amendment claim of juror bias).

Plaintiff also alleges violations of his due process rights.[5] Plaintiff's due process claims, in summary, allege that defendants caused him to be arrested, detained, and prosecuted without probable cause. Neither the procedural nor substantive due process prongs of the Fourteenth Amendment afford plaintiff relief for claims essentially alleging false arrest or malicious prosecution. See Albright v. Oliver, 510 U.S. 266 (1994) (plurality opinion); Graham v. Connor, 490 U.S. 386, 394 (1989); Meehan v. Plymouth, No. 97-2235, 1999 WL 44756 (1st Cir. Feb. 3, 1999); Reid v. New Hampshire, 56 F.3d 332, 341 (1st Cir. 1995). Accordingly, plaintiff's due process claims under § 1983 are dismissed, although the same claims may be cognizable as state tort claims. See id.

---

[5]Plaintiff's reference to the Fifth Amendment is understood to duplicate his due process claim under the Fourteenth Amendment as he alleges no other grounds for a Fifth Amendment claim.

25

Plaintiff also alleges that defendants violated his right to equal protection under the Fourteenth Amendment, but he does not allege any disparate or discriminatory treatment nor does he identify himself with a protected class.[6] To state a claim under the equal protection clause, plaintiff must allege that he was the victim of intentional discrimination. Judge, 160 F.3d at 75. Accordingly, as plaintiff has alleged no facts in support of his equal protection claim, it must be dismissed.

F. Conspiracy

The magistrate judge recommended that plaintiff's conspiracy claims brought pursuant to 42 U.S.C.A. § 1985 and § 1986 be dismissed as plaintiff had not alleged the elements of a § 1985 conspiracy and a § 1986 claim cannot stand alone. The court agrees and adopts the magistrate's recommendation as to the disposition of the § 1985 and § 1986 claims.

In his objection, plaintiff argues that he also intended conspiracy claims based on § 1983. Plaintiff's allegations construed in his favor are sufficient for purposes of preliminary review to state a § 1983 conspiracy consisting of "a combination

---

[6]Plaintiff's allegations of discrimination against him as a pro se litigant pertain to proceedings before the CJC, the New Hampshire Supreme Court, and Judges Coffey and Murphy and do not involve his surviving claims based on his arrest or prosecution on stalking and arson charges.

26

of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another." Earle v. Benoit, 850 F.2d 836, 844 (1st Cir. 1988) (quotation omitted); see also Brennan v. Hendrigan, 888 F.2d 189, 195 (1st Cir. 1989).

Plaintiff includes private individuals as defendants in his conspiracy claim alleging that they "acted in unification to deprive the plaintiff" of constitutional rights. State action is a requirement for § 1983 claims, but private individuals may be liable if the private defendant and a state actor acted jointly to deprive plaintiff of his civil rights. See Rubin v. Smith, 919 F. Supp. 534, 538 (D.N.H. 1996). For purposes of preliminary review, plaintiff's allegations are sufficient to state a claim of joint action.

G. Claims Against Particular Defendants

Plaintiff's claims against several individuals who are protected by immunity are also dismissed.[7] As is discussed

---

[7]To the extent plaintiff may have intended to bring state tort claims, in addition to § 1983 claims, against these defendants, his claims would be barred by defendants' immunity under state law. See Gould v. Director, New Hampshire D.M.V., 138 N.H. 343, 346 (1994); Belcher v. Paine, 136 N.H. 137, 147 (1992).

above, plaintiff's claims against Judge Frasier are barred by his judicial immunity from suit for actions taken in his judicial capacity within his jurisdiction. Plaintiff's allegations against defendant Timothy Simpson, identified as a bail commissioner and justice of the peace, claim that Simpson violated plaintiff's constitutional rights by issuing arrest warrants for plaintiff that were not based upon probable cause and by ordering plaintiff held without bail. As all of Simpson's actions alleged by plaintiff are part of his function as a bail commissioner and justice of the peace, and within his jurisdiction in those functions, he is protected by judicial immunity from plaintiff's claims. See Slotnick v. Garfinkle, 632 F.2d 163, 166 (1st Cir. 1980); Thompson v. Sanborn, 568 F. Supp. 385, 391 (D.N.H. 1983). Similarly, John Clark, who was acting in his function as clerk of court and at the direction of Judge Frasier in all actions alleged by plaintiff, is protected by quasi-judicial immunity. See Forte v. Sullivan, 935 F.2d 1, 3 (1st cir. 1991). Plaintiff's claims against Steven Keable, based on Keable's actions within his prosecutorial function preparing, advocating, and finally dismissing the arson charges against plaintiff arising from the fire at the Copper Penny Restaurant,

28

are barred by Keable's prosecutorial immunity.[8]  See <u>Kalina v.</u>
<u>Fletcher</u>, 118 S. Ct. 502, 506-7 (1997).


H.   <u>State Tort Claims Against the Coffey Defendants</u>

Plaintiff brings claims against Judge Patricia Coffey, John
Coffey, Coffey Legal Services, and a secretary at Coffey Legal
Services for state torts based on malpractice and violation of
the attorney client privilege.  All of the federal claims
relating to the same events brought against Judge Coffey are
dismissed.  The state law claims against Judge Coffey alleging
her duty to disqualify herself from hearing his criminal case
challenge Judge Coffey's actions in her capacity as a judge and,
therefore, are barred by her judicial immunity.  See <u>Gould</u>, 138
N.H. at 346.  Plaintiff's claims against the remaining Coffey
defendants allege state tort claims for malpractice and violation
of his attorney client privilege pertaining to his relationship
with Coffey Legal Services in 1991 and Judge Coffey's involvement
in his criminal case on charges from the Nifty 50ies Café arson
charges.

_____

[8]Ordinarily, the claims against Keable, brought in his
official capacity only, would be construed as claims plead
against the county rather than against Keable individually.
Because plaintiff includes a more detailed description of
Keable's role, however, he may have also intended an individual
claim to which prosecutorial immunity would apply.

29

The claims against the Coffey defendants are based on entirely different factual circumstances than the claims remaining against the other defendants. The claims remaining against the other defendants, alleging malicious prosecution, false arrest, deprivation of Fourth Amendment rights, and a § 1983 conspiracy, are based on the circumstances of plaintiff's arrest and initial detention on charges of stalking and arson of the Copper Penney Restaurant and have nothing to do with the Coffey defendants' alleged representation of plaintiff or his resulting attorney client privilege. The Coffey defendants are not named in connection with any of the stalking or arrest claims and none of the other remaining defendants are implicated in any way in the state tort claims alleged the Coffey defendants.

Since plaintiff's state law claims against the Coffey defendants do not share the same core of facts or the same central theories as the other remaining claims, the court lacks supplemental jurisdiction to consider the claims against the Coffey defendants. 28 U.S.C.A. § 1367(a); see also City of Chicago v. International College of Surgeons, 118 S. Ct. 523, 530 (1998); Futura Dev't of Puerto Rico, Inc. v. Estado Libre Asociado de Puerto Rico, 144 F.3d 7, 13 (1st Cir.), cert. denied, 119 S. Ct. 338 (1998). Accordingly, all claims against John Coffey, Coffey Legal Services, and individual employees of Coffey

30

Legal Services are dismissed for lack of subject matter jurisdiction.

I.  Remaining Claims

For purposes of § 1915A review, plaintiff's complaint states claims in counts XIV through XVIII, pursuant to 42 U.S.C.A. § 1983, for violations of his Fourth Amendment rights, and conspiracy to do so based on his arrest for stalking and arrest and prosecution on arson charges related to the fire at the Copper Penny Restaurant.  Count XXI states similar Bivens claims against Clayton Foster.[9]  Plaintiff alleges state tort claims in the same counts for negligent hiring and supervision, abuse of

---

[9]Plaintiff brings claims under 42 U.S.C.A. § 1983 against defendant Clayton Foster, identified as a United States Probation Officer, and agents of the Federal Bureau of Alcohol, Tobacco, and Firearms.  As these defendants are federal officers acting under color of federal, rather than state, law, the claims against them would be more properly brought directly under the Constitution.  See Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971).  Since § 1983 actions and Bivens actions are "kindred" claims, plaintiff's allegations pertaining to the federal defendants are construed as Bivens claims but evaluated, for purposes of preliminary review, under the same legal standards as the related § 1983 claims.  See, e.g., Day v. Massachusetts Air Nat'l Guard, No. 98-1727, 1999 WL 44728 *6 (1st Cir. Jan. 29, 1999); Kelly v. Serna, 87 F.3d 1235, 1238 (11th Cir. 1996).

process, false arrest, malicious prosecution, defamation, invasion of privacy, and false imprisonment.

Conclusion

For the foregoing reasons, based upon preliminary de novo review pursuant to § 1915A, plaintiff's claims alleged in his amended complaint filed on December 29, 1997, (document no. 4) in counts I through XIII, XIX, XX, and XXII are dismissed. As to the remaining counts, all claims based on the First, Fifth, Sixth, Eighth, and Fourteenth Amendments are dismissed. Also, any claims in the remaining counts against Judges Coffey, Murphy, and Frasier, Justice Johnson, individual justices and employees of the New Hampshire Supreme Court, members and employees of the CJC, Timothy Simpson, Steven Keable, and John Clark are dismissed.

The claims and defendants remaining in the complaint are as follows:

Count XIV: Alleges Fourth Amendment violations actionable as a conspiracy under 42 U.S.C.A. § 1983 and state tort claims of false arrest, false imprisonment, malicious prosecution, abuse of process, invasion of privacy, and defamation. Claims are brought against the chief of the North Hampton police department, Frank Beliveau; North Hampton police officers Richard Sawyer, Jr.,

32

David Gigare, Robert Wharem, Jane Doe, Michael Maloney; Seabrook police officer James Cauley and several unknown Seabrook police detectives; Chief of the Hampton police department, Robert Marks; Hampton police officers Shawn Maloney, Philip Russell, William Lilli, and Dan Gildey; United States Parole Officer Clayton Foster; two unknown agents of the Federal Bureau of Alcohol, Tobacco, and Firearms; and individual defendants, Amy Keegan, and Raymond and Margaret Desilets.

Count XV:  Alleges Fourth Amendment violations actionable under 42 U.S.C.A. § 1983 and state tort claims of negligent hiring, training, and supervision, that are brought against the Town of North Hampton and its selectmen, Richard Crowley, Dick Wollmar, Stanley Knowles, and Mary Herbert.

Count XVI:  Alleges Fourth Amendment violations actionable under 42 U.S.C.A. § 1983 and state tort claims of negligent hiring, training, and supervision, that are brought against the Town of Hampton and six unknown selectmen.

Count XVII:  Alleges Fourth Amendment violations actionable under 42 U.S.C.A. § 1983 and state tort claims of negligent hiring, training, and supervision, that are brought against the Town of Seabrook and several unknown selectmen.

Count XVIII:  Alleges Fourth Amendment violations actionable under 42 U.S.C.A. § 1983 and state tort claims of negligent

hiring, training, and supervision, that are brought against Rockingham County.[10]

Count XXI: Alleges Fourth Amendment violations against Clayton Foster.

Accordingly, the amended complaint (document no. 4) together with a copy of this order and of the report and recommendation (document no. 9) shall be served on the defendants remaining in the suit.

SO ORDERED.

                                              _____
                                              Joseph A. DiClerico, Jr.
                                              District Judge

February 24, 1999

cc: Steven J. Nowaczyk, pro se

---

[10]As the individual commissioners and superintendent of the jail are sued only in their official capacities, those claims are construed as claims against the county, not against the individual defendants. See Kentucky v. Graham, 473 U.S. 159, 165 (1985).